24224. BLUESTEIN *v.* THE STATE.

Decided December 17, 1934. Rehearing denied February 14, 1935.

*Branch & Howard, Thomas B. Branch Jr.,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,* contra.

Per Curiam. The accused was convicted of arson, and his motion for a new trial contained the general grounds only. The evidence, while circumstantial, was sufficient to establish the corpus delicti, and to exclude every reasonable hypothesis except that of the guilt of the defendant. The refusal to grant a new trial was not error.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*

Broyles, C. J., dissenting. It is well settled that in every prosecution for the offense of arson the burden is on the State to establish, beyond a reasonable doubt, two fundamental facts: first,

a burning; and second, that the burning was due to some criminal agency. *West* v. *State,* 6 *Ga. App.* 105, 106 (64 S. E. 130); *Davenport* v. *State,* 12 *Ga. App.* 102, 103 (76 S. E. 756); *Sevier* v. *State,* 17 *Ga. App.* 277 (86 S. E. 533). If these two fundamental facts are shown beyond a reasonable doubt, the State then has the burden of proving the guilt of the accused; and where the evidence tending to connect him with the offense is wholly circumstantial, the circumstances must exclude every reasonable hypothesis except that of his guilt. *Kinsey* v. *State,* 12 *Ga. App.* 422 (4) (77 S. E. 369); *Sevier* v. *State,* supra. In the instant case, conceding (but not deciding) that the evidence authorized a finding that the burning of the house in question was the work of a criminal agency, the evidence tending to connect the accused with the burning was entirely circumstantial, and, while raising a strong suspicion against him, was insufficient to exclude every reasonable hypothesis save that of his guilt. In my opinion the verdict of guilty was not supported by the evidence.

### ON MOTION FOR REHEARING.

PER CURIAM. The testimony in this case was to the effect that the defendant was seen leaving his home "between 15 minutes before 8 and 15 minutes after 8 o'clock that night;" that the fire was discovered about 9 or 9:30 o'clock; that when the firemen arrived the glass "transoms, you might call them," on each side of and above the door were covered with automobile-top material or material of such a character, and tacked so close together as to prevent the fire from being seen outside the reception hall wherein it was burning; that there was no fire in any other room; that the firemen "went to the front door and hit it with an axe and the glass broke, and the fire was right there in that little reception hall. First, the smoke was black, as black as anything could be, and nearly knocked you down when the glass was knocked out and the smoke and flames flared out. It was turpentine smoke. I smelled turpentine when I first bursted in the door. When we put the fire out this odor was still present. There was a nail keg, it seemed to be, in the center of the room burning when we got in the room, and there was still turpentine in the bottom. You could smell the turpentine all over the room, and the furniture had turpentine on the upholstery stuff. I saw the fire, but I didn't see it burning any wood or other substance around any electric

582

wires. The only thing around the electric wires that I recollect was this one hanging down from the ceiling and the burnt place around it. I went into the attic and found no fire there, but you could see that hole burnt around where the wire came through. I would say the fire did not start there, but started right under it in that keg. If the fire had started in the wood where the light wires come through the ceiling, that would have been the worse burnt place, and the fire would have gone up to the roof and been up in the roof upstairs instead of down. Fire don't travel down, it usually travels up. The only burnt place above the floor was in the ceiling around that light wire. There was nothing on the roof at all. From my past experience as a fireman and what I observe, I express my judgment the fire started in the living room. The fire was in and around the keg and the pieces of furniture and grafanola, and those things were worse burnt than anything else."

It is true the defendant introduced an electrician who went to the house several days after the fire and who testified to certain facts and opinions which, if believed by the jury, would have authorized them to find that the fire was accidental. However, this merely produced a conflict in the evidence, which the jury resolved in favor of the State. It appears from the evidence that the house was locked, the defendant's wife was out of the city, and there was no suggestion that anyone had entered the house, forcibly or otherwise, since the defendant had left it about an hour and a half before. A keg of turpentine was burning in the middle of the room. Thick automobile topping material had been tacked over the glass transoms and the small windows beside the door, which kept the fire from being seen on the streets before it got heavily underway. When the firemen arrived they could not see the fire, and on breaking in the door they found the keg of turpentine burning and the furniture in this room saturated with turpentine. The defendant told the officers that he had $2700 fire insurance on the house and $2000 on the furniture. The defendant made no explanation of why the keg of turpentine was in the house or why the transom and side-lights were covered by canvas closely tacked thereon, or why the furniture was saturated with turpentine. We think that the circumstantial evidence was sufficient to support the verdict of guilty.

This case is differentiated by its facts from *Kinsey* v. *State*,

supra. In that case there was no turpentine, kerosene, gasoline, or other like substance spread on the furniture or found in that part of the house where the fire originated. Furthermore, in the *Kinsey* case, before the fire was discovered the defendant rode away from the house that was burned, and "a stranger was shortly afterwards in the basement of the same house." In the instant case, so far as the evidence shows, the defendant was the last one in the house prior to the fire, the house was still locked at the time the firemen arrived, and there was no suggestion that anyone had entered the house between the time that the defendant last left it and the fire started.

*Rehearing denied. MacIntyre and Guerry, JJ., concur. Broyles, C. J., dissents.*