75 So.2d 182

**Elsie Odell WHATLEY**

v.

**STATE.**

**6 Div. 653.**

Court of Appeals of Alabama.

Sept. 14, 1954.

Rehearing Denied Oct. 19, 1954.

Kingman C. Shelburne and J. J. Cockrell, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted of the offense of arson in the first degree and was sentenced to the penitentiary for a term of three years.

Defendant's sole argument in brief is the insufficiency of the evidence to support the verdict.

The testimony shows fire was discovered in the house occupied by defendant and his wife about 3:15 or 3:30 on Saturday morning, September 20, 1952. A few minutes earlier an automobile was heard to pull away from in front of the house. The house was of the duplex type, with three rooms on each side. According to the firemen the south side of the building had some furniture in it and the fire was mostly on that side. Three separate and unconnected fires were burning. The drawers of the vanity dresser, chifforobe and kitchen cabinet were pulled out and filled with wadded, kerosene soaked papers. The remains of a sofa or chair that had been saturated with kerosene was still burning. Holes had been cut or sawed through the plaster and laths and a fire was burning between the ceiling and roof.

There was no clothing, no household linens and no personal effects of any kind

in the house except the furniture, two or three dishes and a few pots and pans.

All of the windows and the glass door were shielded by window shades, bed spreads, gunny sacks, etc.

James Collins, a Negro man, testified defendant had an arrangement for him to keep some hunting dogs. He said defendant came to his house Friday night about dark with two dogs in a trailer. He left the dogs and trailer and took another dog with him. He also left two boxes, a rifle, hose pipe, and a coil spring. After the fire the boxes were turned over to the authorities. This witness next saw defendant on Sunday night about 8:30 or 9:00 o'clock, when he picked up a dog but did not get the boxes and other articles.

Detective. Davis testified he received the boxes from Collins. They contained the following assortment of personal effects: 1 breakfast table cloth; 1 carton and 7 pkgs. Camel cigarettes, 4 pkgs. Chesterfield; 2 pr. sox; necktie, handkerchief, steel tape; courtesy card from Texas Co. and one from Pure Oil Co., road maps; 1 percolator, aluminum; box of Ballard flour. Wrapped in a pillow case; ½ pkg. of corn meal wrapped in pillow case; 1 sifter; 1 biscuit pan; 1 house coat; misc. dish towels & rags; crochet pin cushion; wax paper; bill of sale for Chevrolet car from Paul Baker Motor Co.; misc. papers; toilet paper; ladies over rubber shoes; house shoes; men shoes; one electric fan Westinghouse; ladies gloves; ladies white shoes; man's belt; crocheting and thread and needles; misc. sewing material; baking powder; flashlight; toothpicks; ice cream freezer; light bulbs; bathing trunks; two pair pants; glass pitcher with towel wrapped around; hair brushes and hair setters; coffee; one automatic 22 caliber, Winchester rifle, Model 74; paint brush; ladies underwear; beauty parlor aprons; ladies shorts; dresser scarf; pair men's shoes; ladies galoshes; moth balls; girdle; knitted dollies; turkey call; 2 cans of sardines; abstract to house in Mobile, Lot No. 59 of Colgins Addition to Oakdale (now Mobile); abstract and attorneys opinion; homestead return; misc. important papers, legal, receipts, etc.; envelope of some old coins (mostly nickels and pennies); Merlin hair clippers in box; tea, salt and pepper shakers, mustard; 2 pocket knives; misc. small tools and electric fittings and hdwe.; badge; one box of misc. small items such as powder, shaving cream, toilet articles, kitchen stuff like soda, rice, etc.; one box containing fly spray, paint cans, wax and other bottles and cans.

This witness testified he also secured from the home of Mrs. Headrick, defendant's relative, 2 pistols, a kodak, 2 suit cases, clothing, bed linens and 2 pillows, which were introduced in evidence and other clothing was found at a cleaning establishment, placed there by defendant after the fire.

Mrs. Headrick testified she was defendant's niece. Mr. and Mrs. Whatley came to her home around 10:00 o'clock Sunday night after the fire. They brought with them a cosmetic bag, a small bag, a hat each, a camera with flash bulb attachment, 2 pistols, 2 pillows, some clothing on a hanger, small market basket of toilet articles and a water jug. She turned these articles over to the authorities. She testified on cross-examination the Whatleys told her they had taken the articles to Mobile and they were the same items they had taken on a trip to the west coast and some of the men's clothing belonged to Mrs. Whatley's son. Defendant also left a dog trailer with dogs in her alley. He had parked the trailer there often during the six years she had lived there. The Whatleys spent Sunday night with her and after their release from jail stayed there for about three weeks.

There was evidence that Mrs. Whatley had two fire insurance policies, amounting to $3500, on the personal property located in the building. She recovered a total of $600 on both policies.

There was also testimony that the building was insured by the landlord for $2000 and that he recovered approximately $1300 after the fire. To this amount he added $150 of his own money to restore the building. The evidence was that the cost of replacing the building, in the event of total destruction, would have amounted to $4600.

The evidence on defendant's behalf tended to show that during the summer before he moved into the house he and Mrs. Whatley drove to the west coast for a visit to relatives. They took with them to California, in addition to their clothing, things to cook with on the side of the road, "and anything we would need like that, we took a fan, an ice cream freezer and stuff we would use." They also took a camera and a big pasteboard box in the trunk of the automobile. When they returned from California the last part of August defendant rented the entire house located at 1112 Coosa Street and moved into it on September 1st. A squatter was occupying one side and the Whatleys took the other side pending eviction of the squatter by the owner's attorney. The squatter moved out about a week before the fire and defendant moved to the south side. On the north side of the house he kept a camping outfit, "two cots and stuff like that."

At this time he owned eleven dogs and he moved two of them to the house. He tied them in back of the house in the day time and at night kept them in a two wheel covered trailer, "a sort of dog house on wheels." Defendant testified he and Mrs. Whatley left Birmingham for Mobile on Friday evening before the fire. He took the dog trailer with the two dogs to James Collins' house. There he left the "house" trailer with the squirrel dogs and picked up two fox dogs and put them in the car trunk. He had a big box in the trunk. The ice cream freezer, fan, camera, etc., were packed in there just like it came from California and, in order to make room for the dogs, he asked James Collins to keep these articles until he came back. He then drove to Mrs. Headrick's and picked up his "road trailer" a small trailer with springs on it. They drove to the vicinity of Jackson, Alabama, where he loosed his dogs and let them run for several hours. After that he went into Jackson and got a haircut at a barber shop about 6:30 or 7:00 Saturday morning. They drove on to Mobile and his wife transacted some business with a real estate firm. They then drove to Baldwin County, returned to Jackson, visited friends there and arrived in Birmingham Sunday night. Witnesses who testified to seeing defendant in Jackson placed him there at approximately 8:30 or 9:00 on Saturday morning and there was testimony that Jackson was around 200 miles from Birmingham. There was also testimony to the effect that appellant did not have a trailer attached to his car in Jackson. Appellant's explanation as to this was that he had to leave the trailer at a garage for repairs. With reference to the locks on the south side of the house, defendant stated, "the door locks. It was no regular door lock that would work. * * * I got some metal strips and put a lock on the front and the back and the other had a night latch on it." The lock on the connecting room to the other side of the house would not fasten. The bottom sash and a pane were out of the window in the middle room on the north side. Defendant also introduced evidence as to his good reputation.

In arson the corpus delicti consists first of a building burned; and second, that it was wilfully fired by some responsible person, Carr v. State, 16 Ala.App. 176, 76 So. 413, and the guilt of defendant may be proven by circumstantial evidence as well as by direct evidence. Cunningham v. State, 14 Ala.App. 1, 69 So. 982; White v. State, 26 Ala.App. 245, 157 So. 263; McDonald v. State, 165 Ala. 85, 51 So. 629; Bluestein v. State, 50 Ga.App. 580, 178 S.E. 423; 6 C.J.S. Arson, § 38, p. 759.

In Pickens v. State, 115 Ala. 42, 22 So. 551, 554, it was stated:

"The test of the sufficiency of circumstantial evidence is whether the circumstances, as proved, produce a moral conviction, to the exclusion of all reasonable doubt, of the guilt of the accused,—whether they are incapable of explanation upon any reasonable hypothesis consistent with his innocence. In Ex parte Acree, 63 Ala. 234, the principle, as it may be collected from approved text writers and the current of judicial decision, was announced by Stone, J.: * * * 'that upon circumstantial evidence there should not be a conviction unless, to a moral certainty, it excludes every other reasonable hypothesis than that of

the guilt of the accused. No matter how strong may be the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof the law requires.' "

 Instructions were given submitting the question of the sufficiency of the evidence under the circumstantial evidence rule. The jury found the defendant guilty of the crime charged. From an examination of the evidence we are of the opinion the circumstances proved exclude with moral certainty every reasonable hypothesis except that of appellant's guilt, and was sufficient to sustain the conviction, and the motion for a new trial was properly overruled.

Charges refused to defendant which assert correct propositions of law were fairly and substantially covered by the court's oral charge and charges given at defendant's request.

There being no reversible error in the record, the judgment is ordered affirmed.

Affirmed.

### On Rehearing.

Appellant's counsel argues that it would be absurd for a person planning arson to take the small articles listed across town to save them from being burned, and that it does not sufficiently appear from the record that the articles found in Collins' possession were placed there by appellant immediately before the fire. He states in brief: "It will be recalled that Whatley and his wife had been in California and they were going to rent another home on their return, and it is entirely reasonable to believe that they were left with Collins pending the acquisition of another house * * *. The record is perfectly consistent with the facts to the effect that Whatley and his wife stored these articles until they could get the squatter out of the house so that they could use the portion of the house that they had not been able to get possession of."

As set out in the opinion, in addition to the testimony of Collins and Detective Davis regarding the box and its contents, the defendant himself testified he left the box, packed as it came from California, at Collins' on Friday night before the fire early next morning, in order to make room in the car trunk for the dogs.

Application overruled.