Second degree murder; sentence: twenty years.
This is the latest in a line of trials and appeals resulting from the murder of Gordon Zuck on December 5, 1973. The present appeal was taken from the appellant's second trial. The first trial ended in a mistrial.
The State indicted and convicted the appellant of being a member of a conspiracy which carried out the murder of her father, Gordon Zuck. Other members of the conspiracy were alleged to be the appellant's mother, Ruth Zuck, and the appellant's brother, Richard Zuck. The actual perpetrators *Page 425 
of the murder were alleged to be two employees of the Zuck family, Jackie Farris and Jennifer Worthington.
The facts surrounding the present case have more than adequately been set out by Judges DeCarlo and Tyson in their respective opinions concerning appeals by Richard and Ruth Zuck. Zuck v. State, 57 Ala. App. 15, 325 So.2d 531 (1975), cert. denied 295 Ala. 430, 325 So.2d 539; Zuck v. State, Ala.Cr.App., 331 So.2d 777, cert. denied Ala., 331 So.2d 796. We will not discuss the facts in the present case except insofar as they are relevant to this appeal.
The most damaging testimony presented at trial was that of Jennifer Worthington. She testified that approximately five days before Gordon Zuck's death, a conversation took place in the lobby of a Zuck owned movie theater. Present during the entire conversation were Richard Zuck, Jackie Farris, Joan Farris, Jennifer Worthington, and the appellant. Richard Zuck said something had to be done about Gordon Zuck. Richard Zuck stated that the business was in trouble, and he thought Gordon Zuck would have to be killed. Jackie Farris responded that chloroform would be a good way to kill Gordon Zuck. Richard Zuck said he didn't know, but there had to be a way. At this point, Jennifer Worthington asked Richard Zuck if he was serious, and Zuck said he was.
Then Jennifer Worthington testified about transactions that took place at the time of Richard Zuck's trial. She testified that the appellant twice gave her money "to get out of town" and to maintain silence during that period.
Three days after the murder, the details were related to Joan Farris by Jackie Farris in Jennifer Worthington's presence. This conversation took place at the home of the appellant. The appellant and Joan Farris were roommates, and Jackie Farris on occasion also roomed with them.
 I
The appellant contends that the testimony of Jennifer Worthington should have been excluded at trial. It is well settled that before a co-conspirator's testimony may be admitted, there must be prima facie grounds for believing in the existence of the conspiracy. Collins v. State, 137 Ala. 50,34 So. 403 (1903); Cox v. State, 240 Ala. 368, 199 So. 806
(1941); Langham v. State, 243 Ala. 564, 11 So.2d 131 (1943);DeBardeleben v. State, 16 Ala. App. 367, 77 So. 979, cert. denied 201 Ala. 523, 78 So. 877 (1918). While it is preferable that a co-conspirator testify after the prima facie showing of the existence of a conspiracy, such order of proof is not mandatory. The order of proof requirement is for the purpose of expediting the trial and saving the valuable time of the trial court, rather than protecting or securing any supposed right a defendant might have. Smith v. State, 8 Ala. App. 187,62 So. 575 (1913).
 II
The real issue in this case is whether or not there was sufficient evidence, independent of Jennifer Worthington's testimony, to connect the appellant to the conspiracy. If such independent evidence was present, then there was no error in allowing Jennifer Worthington to testify against the appellant. We have examined the record carefully. There is sufficient evidence, aside from Jennifer Worthington's testimony, from which the trial judge could find the following:
(1) There was a conspiracy to kill Gordon Zuck.
(2) Jennifer Worthington, Jackie Farris, and Richard Zuck were members of the conspiracy.
(3) Jennifer Worthington and Jackie Farris killed Gordon Zuck pursuant to the conspiracy.
The State contends that there was also sufficient evidence to show that the appellant was part of the conspiracy. The record reveals eight pieces of evidence from which the trial judge might infer that the appellant was a member of the conspiracy.
 A.
Frank Meadows, a former employee of the Zuck's, had three conversations in late *Page 426 
July 1973 with Ruth Zuck and the appellant. The conversations occurred approximately four months before Gordon Zuck's death. The first conversation took place in the Zuck owned theater in Vestavia and was related to the court by Meadows as follows:
"A. Susan offered me the money.
 "Q. What did she say? Tell us the words, as best you recall.
 "A. Susan said do you think you could find somebody to kill our old man. I said I don't know, I'll check on it and see.
* * * * * *
"Q. Did you attempt to find someone?
"A. Yes I did."
 B.
On the following Friday while in Selma, Frank Meadows had a telephone conversation with Ruth Zuck and the appellant. The conversation was related to the court by Frank Meadows as follows:
 "Susan asked me did I find somebody and I told her I may have, I didn't know. . . ."
 C.
Frank Meadows then met with Ruth Zuck and the appellant at the Vestavia Hills Country Club the following Sunday. They conferred as follows:
"A. I was asked did I find somebody.
"Q. Who asked you that?
 "A. Mrs. Zuck, I believe. I said I think I may have. They said well forget it, we'll handle it ourselves.
"THE COURT: Who said that?
"A. Mrs. Zuck." (Emphasis supplied.)
 D.
Eight days after the murder of Gordon Zuck, the appellant had a conversation with Betty Saunders, a neighbor, who testified about the conversation as follows:
 "Q. Did you have any conversation after Mrs. Zuck and Richard Zuck left your house, did you have a conversation with Susan Morton about her spending the night there at your house?
 "A. Nothing other than she said she was afraid to go home because the police had a tape with her offering a man five hundred dollars to kill Gordon."
 E.
In the first part of February 1974, approximately two months after the murder, Alice Salter had a conversation with the appellant. Alice Salter's testimony was as follows:
 "We were sitting in the kitchen of Susan's home in Homewood and she told me that the reason she knew that I had lied for Rick about what time he came into his apartment that night was because the two people who had murdered her father had told her that Rick's car was sitting at the Pancake House at four o'clock that morning and for me not to worry about Rick being convicted for the murder of her father because these two people were so close to the family and so devoted to the family that they would never let Rick accept the responsibility for the death."
 F.
On May 18, 1974, Richard Zuck, Alice Salter, and the appellant had a conversation. Alice testified about the conversation as follows:
 "Just Rick and myself at first. We were having an argument. Susan came in and I was in Selma, she was having a birthday party. She came in and told us to stop arguing that it was her birthday and she wanted everybody to have a good time and Rick said Alice says she's going to the police and she's gonna tell them the truth and Susan said you know she won't do anything like that because she loves you too much."
 G.
At the time of Richard Zuck's trial, his brother, Lou Zuck, had a conversation with the appellant. Lou Zuck told the appellant that he had seen Jennifer Worthington kill Gordon Zuck. On the State's cross-examination *Page 427 
of the appellant, the following colloquy occurred:
 "Q. At the time that Lou Zuck told you that, that he had seen what was going on, was he correct in saying that you said let's go talk to mama about it?
"A. Yes sir.
"Q. Is that what was said?
"A. Yes sir.
 "Q. At that time, as I understand it, you knew absolutely nothing about Richard Zuck's involvement in this murder, is that correct?
"A. That's right.
 "Q. All you knew at that time was that a woman you had known for three weeks and a boy you knew was an ex-convict had killed your father, right?
"A. Yes sir.
 "Q. Did you walk in the motel room and call the police or anybody and say hey these two people, some woman I've never known until three weeks ago and an ex-con killed my father?
"A. No sir.
"Q. Did your mother do that?
"A. No sir."
 H.
Sometime in June or July 1974, Diane Chandler, an employee of the Zuck's in Selma, had a conversation with the appellant. The appellant told Diane Chandler the following:
 "A. Susan asked me did I remember when Jennifer came into the theatre and called her and I told her yes. Susan said that she might have to come up here to court and Susan told me that if she had to come up here that I might have to get up here and testify and Susan asked me if the money that she gave Jennifer was it for the babysitter and I said yes.
"Q. Was that the truth?
"A. No."
The preceding eight excerpts from the testimony at trial must connect the appellant to the conspiracy before Jennifer Worthington's testimony is admissible. Taken individually, none of the testimonial excerpts would be enough, standing alone, to tie the appellant to the conspiracy. However, when the eight pieces of evidence, along with the logical inferences which may be drawn from them, are taken together, they then begin to fit together into a mosaic which ties the appellant into the conspiracy. We find that there was sufficient evidence from which a jury could draw an inference that appellant was a co-conspirator in the murder of her father. Therefore, there was no error in admitting the testimony of Jennifer Worthington.
The law in this State is well settled that when two or more persons, by prearrangement or on the spur of the moment, enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a co-conspirator, and if the purpose of such enterprise is carried out, each is guilty of the offense committed, whether he did any overt act or not. Positive testimony is not necessary to prove community of purpose. It is the duty of the jury to determine whether such exists, and the extent of it, from the conduct of the parties and the testimony in the case. Stokley v. State, 254 Ala. 534,49 So.2d 284 (1950). Neither is the accused's presence at the scene of the crime necessary. All persons concerned in the commission of a felony, whether they directly commit the act, or aid or abet in its commission, though not present, must be tried and punished as principals. Title 14, § 14, Code of Alabama 1940; Mitchell v. State, 51 Ala. App. 411, 286 So.2d 85
(1973).
 III
The appellant contends that the trial court erred in failing to grant the appellant's motion to exclude the State's evidence. We disagree.
A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless after allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust. *Page 428 Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969).
Conflicting testimony presents a question for the jury, and a verdict rendered thereon will generally not be disturbed on appeal. Pugh v. State, 51 Ala. App. 164, 283 So.2d 616 (1973). A motion to exclude the State's evidence is properly overruled where a prima facie case is presented by the State. Young v.State, 283 Ala. 676, 220 So.2d 843 (1969). We find that the State, though barely so, presented a prima facie case which would support the finding of the jury.
It is not our function to examine the record in order to satisfy ourselves that the appellant is guilty beyond a reasonable doubt. Our function, where sufficiency of the evidence is properly before us, is to examine the record and determine if the State put on sufficient evidence from which a jury might have found the accused guilty. The logical inferences that may be drawn from the combined testimony of Jennifer Worthington, Alice Salter, and Frank Meadows are devastating to the appellant, and would support the verdict of the jury. The appellant put on evidence, which if believed by the jury, would have rebutted, impeached and explained away the State's evidence. The jury obviously believed Jennifer Worthington, Alice Salter and Frank Meadows, and just as obviously, did not believe the appellant.
AFFIRMED.
TYSON, HARRIS and DeCARLO, JJ., concur.