TYSON, Presiding Judge.
Cecil Dates was indicted in a three-count indictment for the unlawful burning or causing the burning of the dwelling house of one Doris Whack in which burning Edward Huntley and Donald Whitson were burned, resulting in their deaths.
The appellant filed a pro se petition for a change of venue which was duly overruled. The appellant was duly arraigned, with counsel present, at the time his change of venue was denied, and thereafter the cause came on for trial. The jury found the appellant guilty of first degree arson as charged and fixed punishment at imprisonment in the penitentiary for life. The trial court then entered judgment which set sentence in accordance with this verdict. The appellant’s motion for new trial, which challenged the weight and sufficiency of the evidence, was duly overruled following a hearing.
M. C. Curry stated that he lived at 709 West Fourteenth Street in Anniston, Alabama, on January 29, 1975. He indicated that a girl by the name of Doris Whack resided in a house on the right side of his home on this date. He stated that his wife called to him, saying she heard some dogs barking, that he got up and looked out the window and heard an explosion, then saw the home of Doris Whack suddenly burst into flame. He stated that he went to the back door of the home, tried to kick it open, that he was overcome with smoke, and the Fire Department got there within ten or fifteen minutes. He stated that the house was burned almost beyond repair.
Neal Kilgore testified that as a Captain of the Anniston Fire Department he was called to a home across the street from Carver Center in Anniston shortly after 9:00 on the evening of January 29, 1975. The street address of the fire was 711 West *1122 Fourteenth Street, and the dwelling house at this address was engulfed in a very intense flame inside, being confined primarily to the front section of the house. He stated that it took about two hours to bring the fire under control, but that he did not see any persons burned at the scene. From the record (R. 16):
“Q. Was there anything unusual about the way this fire was burning?
“A. Yes.
“Q. And what was that, sir?
“A. In this particular fire, as I stated in the beginning there, it was a very intense fire and burning in one section more so than anywhere else. Now, this particular fire had burned through the wall and was burning on the front section of the house, on the outside and into the porch area, which would be, the porch is on the southwest corner of the house. And this fire, a lot of this fire was on the outside of this house and in the front section.
“Q. Were you able to make a determination as to the cause of this fire?
“A. Oh, yes; yes, sir.
“Q. And what was your determination as to the cause?
“A. It had_there had been some type of flammable material used in accelerating the flames in this house.”
Captain Kilgore further stated that the intense heat from the fire would have been sufficient to melt a plastic type jug in which flammable material could be placed.
Allen R. Dimmick testified that he was a medical doctor in charge of the Burns Service at the University of Alabama Hospital in Birmingham on the night of January 29, 1975. He stated that he observed one Donald Whitson that evening, a black male, and noted the following (R. 21):
“Q. What was Mr. Whitson’s condition at that time?
“A. He had sustained obvious burns to approximately 50% of his body surface. You measure burns. You take all of the skin of the body as a 100%; and 50% would be half of the skin of the body. The burns involved mostly from the belt line of the waist up; but there were a few scattered areas over his ankles and feet. The majority of the burns were on the upper half of the body.
“Q. Do you have any idea of what Mr. Whitson’s age was?
“A. The age was registered at 16 years of age at the time.
“Q. How long or how many days did you treat Mr. Whitson?
“A. He remained in University Hospital from that date, from January 29, 1975, until the time of his death on the 6th of March, a total of 36 days in University Hospital.
“Q. What was the cause of Mr. Whit-son’s death?
“A. Infection. Infection due to an organism called a kelbsiella, a particular, what we call a gram negative organism. An infection that’s common, more common than we would like to have it in our burn patients.”
Dr. Dimmick stated that he also treated a young black male by the name of Edward Huntley who he also saw on the evening of January 29, 1975, at the University Hospital. From the record (R. 22-23):
“Q. And when you saw Mr. Huntley, what was his condition?
“A. He had flame burns, what we call 2nd and 3rd degree burns to approximately 75% of his body surface. That’s roughly % of his body surface.
“Q. How long did Mr. Huntley remain under your care?
“A. For just 6 days. He expired on the 4th of February, 1975.
“Q. Okay. And what was the cause of his death?
“A. Infection, again for the similar reasons that I mentioned previously. Infection due this time to an organism called Serratia, S-E-R-R-A-T-I-A (Spelling).
“Q. Okay. Is this a type of blood poisoning, similar to what Mr. Whitson had?
“A. That’s correct. Just a different organism; they’re similar infections in blood poisoning.
“Q. Okay. So both of these individuals died while they were at University Hospital?
*1123 “A. That s correct.
Robert Rivers testified that on January 29, 1975, he lived at 1920 Brown Street in Anniston. He stated that the appellant, Cecil Dates, had been at his home a week or two prior to that time, and that his brother-in-law, Edward Huntley, lived with him at this time. He stated that Edward Huntley was twenty-one years of age. He stated that Cecil Dates made the statement to Edward Huntley, in his presence, to this effect (R. 28):
“. . . Edward had told me that Cecil wanted him to burn down some houses for him. And I told him if he wanted them burned down, let him burn them down himself.
“Q. Did Mr. Dates say anything?
“A. No.”
Mr. Rivers further testified that on the night of January 29, 1975, Cecil Dates came by his home between 8:00 and 8:30, and that his brother-in-law, Edward Huntley, left with him in an automobile. He stated that about 9:30 that evening, the appellant telephoned his home and asked if he had seen his brother-in-law, Edward, and he told him to take a cab and come down to the jail. He said that when he got to the County Jail, the appellant asked him about Edward Huntley and if he had made it home, and he replied, “No.” He stated that he returned to his home a few minutes later, and as he did so, he saw his brother-in-law, Edward Huntley, ■ running up the street badly burned. He stated that he took him to the Anniston Memorial Hospital, that when he arrived there he saw one Donald Gene Whitson who also was badly burned, and that the hospital officials in Anniston sent both of them to University Hospital in Birmingham that night, that both of the men died there as a result of the burns.
Bernice Whitson testified that Donald Whitson was her sixteen year old son. She stated that on January 29, 1975, she saw Cecil Dates, the appellant, that he came to her home and asked for her son, Morris Whitson. She said that Donald asked Dates what he wanted with his brother, Morris, and Dates replied, “If you want Morris to help you fight”; and “No, I don’t want that — if I wanted him to do that, if I wanted to fight, I do it myself.” She said that Dates then spoke to one Willie C. Weeks, who lived at her home, and that she left and next saw her son at the University Hospital in Birmingham where he was badly burned. She stated that her son had left with the appellant, and that he died on March 6, 1975.
Morris Whitson testified that he was the brother of Donald Whitson and lived with his mother at 1420 Glenaddie in Anniston on January 29,1975. He stated that he had known Edward Huntley and the appellant, Cecil Dates, for some time and had been with them in December, 1974, just before Christmas when they were riding in the appellant’s car.
Over objection, the witness was permitted to testify that the appellant, Cecil Dates, stopped at a filling station on Noble Street and opened the trunk, then placed some gasoline in some plastic type milk jug containers. He stated that Edward Huntley was present at this time, and that Dates had a conversation with them wherein he offered to pay them $15.00 each if they would burn down Doris Whack’s home. He stated that on the night of January 29, 1975, he saw the appellant sometime after 8:00 that evening near Fourteenth Street, about three or four blocks from the home of Doris Whack. He stated that he did not see his brother or Edward Huntley that evening, but attended their funerals in February and March, 1975.
On cross-examination the witness placed his conversation with the appellant, Cecil Dates, at about six weeks prior to the fire on January 29, 1975, wherein the appellant offered him and Huntley $15.00 each to burn down Doris Whack’s home. The witness also testified that he, the appellant, wanted to do this because Doris Whack had caused his car to get burned up and it cost him $500.00.
Doris Whack testified that she was divorced April 8, 1974, and that she had two children by different fathers. She stated *1124 that during the Spring of 1974, she met Cecil Dates and began dating him, but that she found out he was married in December, 1974, and stopped going with him. She stated this was shortly before Christmas. She stated that she saw him, but did not go out with him during January, 1975, as he came by where she worked, at the Calhoun County Health Department, and she had a conversation with him. She stated that she told him that she was breaking off the relationship with him, that she found out that he was married. She stated that the next day her residence at 711 West Fourteenth Street in Anniston was burned. She stated that she was working on that date and had left her two children with her mother at 1526 Kelley Street, which was about two and one-half or three blocks from her home, and that no one was at her home that evening. She said that later that evening, Cecil Dates came to her mother’s home, that she heard him talking with her mother around 10:00 or 10:30, and that she heard her mother say it looked like her, Doris’, house was on fire. Doris Whack testified the next day her brother went over to the house with her and she found that her washing machine was full of gasoline and her refrigerator also smelled of gasoline. She stated that some of her clothing had been taken from the drawers and spread from the front door to the back and had gasoline on them. She said that in the egg holder of the refrigerator she found gasoline, and there was also gasoline on the gas stove. She stated that when the Power Company representative came, he had to turn off the gas knobs which were in an “on” position on her stove. She said that it appeared that gasoline had been spread from the living room by the front windows and had run to the back of the house. She stated that Cecil Dates, the appellant, came by her home the next afternoon after the fire and said to her, “I am sorry that you got burned out,” and she asked him if he burned the house and he said, “No.”
Mary Rivers testified that she was the wife of Robert Rivers, that she knew the appellant, Cecil Dates, and had known Edward Huntley, that he was her brother. She stated that she remembered Dates coming to her home on the evening of January 29, 1975, and that Huntley left with him. She stated that later that evening her husband awakened her and she found her brother terribly burned, sitting on a sofa. She stated that she called an ambulance and they took him to a hospital in Anniston where he was sent to the University Hospital in Birmingham.
Fannie Mae Burnett stated that she resided at 1526 Kelley Avenue in Anniston on January 29, 1975. She indicated that Doris Whack was her daughter and had been staying at her home that evening. She stated that Cecil Dates came by her home early that afternoon and asked for Doris. She stated she told him that Doris was not there, but that she was looking after Doris’ baby, and he just turned and left. She stated that later that evening she saw her daughter’s house on fire. She stated that Dates came back by her home and said he wanted to see Doris, that Doris’ husband had called and said he was going to “burn her down.” She said the next morning she-went over to Doris’ house and noticed that the living room was burned beyond repair, as was one bedroom and that the kitchen and the other bedroom were badly burned. She said that she could smell gasoline in the refrigerator and saw some in the washing machine, that she also saw some rags with gasoline odors on the floor.
Irene Best testified that she lived at 709 West Fourteenth Street in Anniston, Alabama, on January 29, 1975. She said that when she got to her home that evening there was a fire at her neighbor’s, Doris Whack’s, home, and that one neighbor asked her to call the Fire Department, which she did. She said that her daughter and son-in-law lived upstairs over her apartment, and that she saw Dates as he was coming down the steps after having a conversation with them. She also stated that Dates did not tell her that he received a telephone call from Doris Whack’s ex-husband about burning her home.
Anniston Jail Warden and Sheriff’s Deputy Allen Reese testified that he was on *1125 duty January 29, 1975, when the appellant came by the jail and asked him to call for Calhoun County Deputies Stanley Merrill and Sam Nunnally. He stated that he had the State Trooper’s Office put in a radio call, that the two deputies answered and came by the jail a short time later and talked with Dates around 9:00 p. m. He stated that Dates left the jail sometime between 9:00 and 9:30 and indicated that he had to make an important telephone call. He stated that Dates was gone a little over twenty minutes, and when he returned he heard some sirens from fire engines.
Robert Rivers was recalled and testified that Cecil Dates came by his home the day after the fire and told him he would give him some money to go to see his brother-in-law, Edward Huntley, at the Birmingham Hospital.
Jerry W. Brown, a police detective, stated that he saw two burned victims, Donald Whitson and Edward Huntley, about 10:00 or 10:30 on the evening of January 29,1975, at the Anniston Emergency Center, and that they were badly burned. He then went to 711 West Fourteenth Street and saw a house that had been badly burned, in fact gutted from front to back. He stated that he got a statement from Robert Rivers and also from Morris Whitson, and that the appellant was arrested and charged with arson on February 5, 1975.
Deputy Sheriff Stanley Merrill confirmed seeing the appellant at the Calhoun Jail at about 9:00 for a few minutes, and he told him that someone had taken his television and wanted them to get it. He said that later that evening they received a call that the appellant wanted to talk with them at the jail, and that this was about 9:00 or 9:30 on January 29, 1975.
The appellant’s motion to exclude and motion for a directed verdict were overruled.
I
The appellant contends that the trial court improperly overruled his motion for a change of venue.
There is no creditable evidence in this record which supports the appellant’s motion. This motion was properly denied. Flurry v. State, 52 Ala.App. 64, 289 So.2d 632, writ den., 292 Ala. 720, 289 So.2d 644; Gilliland v. State, 291 Ala. 89, 277 So.2d 901; Payne v. State, 48 Ala.App. 401, 265 So.2d 185, cert. den., 288 Ala. 748, 265 So.2d 192, cert. den., 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669.
II
The appellant next contends that the State failed to present a prima facie case of first degree arson. We do not agree as the facts above stated clearly establish the prima facie case of first degree arson. Moreover, the trial court upon hearing the motion for new trial denied same on this ground. We are unwilling to disturb the verdict of the jury and judgment of the trial court. Lowery v. State, 38 Ala.App. 505, 88 So.2d 854; Pickens v. State, 115 Ala. 42, 22 So. 551; Whatley v. State, 37 Ala.App. 706, 75 So.2d 182.
III
Finally, the appellant contends that the trial court improperly allowed the testimony of Morris Whitson concerning the appellant’s offer to him about six weeks prior to the fire of $15.00 to help burn down Doris Whack’s home.
We are of the opinion that this evidence was properly admitted at trial. McDade v. State, 49 Ala.App. 533, 274 So.2d 89, cert. den., 290 Ala. 369, 274 So.2d 93, cert. den., 414 U.S. 872, 94 S.Ct. 99, 38 L.Ed.2d 90.
We have carefully examined this record and find same to be free of error. The judgment is due to be and is hereby
AFFIRMED.
All the Judges concur.