Arson, second degree; sentence: eight years imprisonment.
Around 2:00 A.M. on November 20, 1976, the Lauderdale County Jail caught on fire and was substantially damaged. The defendant, who was a prisoner in the jail at that time, was indicted, tried, and convicted for willfully setting fire to the jail.
The State's case was based largely on circumstantial evidence. The appellant made timely motions to exclude the State's evidence at the conclusion of the State's case and again at the end of the trial contending, inter alia, that the State failed to make out a prima facie case against the appellant. The trial court overruled the motions.
At about twelve o'clock on the night of November 19, appellant was arrested for driving while intoxicated and running through a police roadblock. He was taken to the Killen Police Station for a P.E.I. test and then to the Lauderdale County Jail. He was placed in a padded cell because of his threats to hang himself. He also repeatedly threatened to burn the jail if he was not taken to a doctor.
Appellant was searched several times before he was placed in the padded cell. He was first searched at the scene of his arrest on the highway. It was a brief pat-down search designed only to locate any weapon which he may have had on his person. Appellant was searched a second time by Officer Jackson in the booking room of the Lauderdale County Jail. It also was a pat-down search which Officer Jackson described as being a good going over of appellant's pockets and clothing from the outside to see if he had any weapons, things of value, or something with which he might hurt himself. All of appellant's personal belongings, including his belt, money, cigarettes, and possibly his matches, were placed in an envelope for safekeeping.
Appellant was searched a third time by the jailer, Officer Wilkes. He testified that he shook the appellant down by checking his head and shoulders, his neck to see if he *Page 484 
had a medallion or chain, and then down along the sides of his chest from his armpits to his waist. Mr. Wilkes stated that he stuck his thumbs into the waist of appellant's pants and went around him and checked each leg and also under the crotch.
Appellant was searched one last time before he was placed in the padded cell. He was instructed to take off his boots. Officer Wilkes shook them upside down and felt inside them and checked appellant's socks. However, Officer Jackson stated that they never searched appellant's underwear.
There were eight or ten people in and out of the booking room at the time appellant was there. Apparently one of them gave appellant a cigarette when Officer Jackson and Officer Wilkes were not looking. Officer Wilkes made appellant extinguish the cigarette before he was locked up. Officer Jackson said that he did not pay close attention to the appellant while they were in the booking room.
The padded cell, in which appellant was placed, was approximately 10 by 12 feet wide and 9 or 10 feet high. The pads on the wall were 14 to 18 inches thick. They were suspended all around the room from a 4 inch beam which was attached to the wall about 6 feet above the floor. The wall above the pads was made of concrete block, and the ceiling was made of plaster. The floor was concrete with a drain in the center. The door was steel and had a 14 by 6 inch port hole which was open. There was one recessed light in the center of the ceiling. There was nothing else in the cell except a rubber mat on the floor.
The light in the ceiling was similar to the lights in other parts of the jail. There had been some electrical problems with several of the lights in the bullpen, but there was never any known problem with the light in the padded cell. The light bulb had only been changed a few times in the ten years that the cell had been used. The light fixture had never been personally inspected by any of the witnesses. The fire marshal admitted on cross-examination it was possible that the heat around the wires in the fixture might have become so intense that the fixture's plastic cover might have melted. There were no wires hanging down below the fixture after the fire, and the photographs admitted into evidence showed that the fixture was intact except for the cover.
The light in the cell had been on before Officer Wilkes went to prepare the cell for the appellant. The light was still on when appellant was placed in the cell and also when Officer Jackson checked on the appellant at 1:30 A.M. The testimony is not clear as to whether the light was on when Officer Wilkes pulled appellant out of the burning cell. The fixture's cover and light bulb were destroyed in the fire.
The fire marshal testified that padding on the walls was highly flammable. He said that the cell was totally burned up by the fire, and there was no way for him to tell how the fire started or which part of the cell got the greatest amount of heat. He did say that the padded cell was the source of the fire in the jail.
Officer Wilkes was the only officer on duty that night to look after the prisoners, the telephone, and the radio. He could not see the padded cell from the radio room and could not see if anyone visited the appellant. He, in fact, did not see Officer Jackson when he checked on the appellant at 1:30 A.M.
Other than police officers, the only persons who had access to the padded cell were the trustees. Four were on duty that night. There was conflicting testimony as to whether their cells were locked. Officer Wilkes, the jailer, said the trustees' cells were not locked. The trustees may have been asleep. Both Officers Jackson and Wilkes said that appellant asked them for cigarettes when they checked on him.
 I
The appellant contends that the State's evidence was insufficient to support his conviction for arson. Appellant raised the issue in his motion for a new trial and motions to exclude the State's evidence. *Page 485 
When the sufficiency of the evidence is in question, it is the court's duty to determine if there was legal evidence from which the jury could by fair inference find guilt. Morton v.State, Ala.Cr.App., 338 So.2d 423 (1976); Creel v. State,53 Ala. App. 504, 301 So.2d 267 (1974). If there is such evidence, the jury's verdict should be upheld. Scroggins v. State, Ala.Cr.App., 341 So.2d 967 (1977); Trussell v. State,57 Ala. App. 109, 326 So.2d 301 (1976). This court does not decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty, Trussel, supra, nor does it resolve conflicts in the evidence, Morton, supra.
The evidence is sufficient if the corpus delicti is proved.Speegle v. State, 51 Ala. App. 504, 286 So.2d 914 (1973).
 "In arson the corpus delicti consists first of a building burned; and second, that it was wilfully fired by some responsible person . . . and the guilt of defendant may be proven by circumstantial evidence as well as by direct evidence. . . ." (Citations omitted.) Whatley v. State, 37 Ala. App. 706, 75 So.2d 182 (1954).
Circumstantial evidence is sufficient as long as it is so strong and cogent as to show the defendant's guilt to a moral certainty and does not fairly permit an inference consistent with the defendant's innocence. Tanner v. State, 291 Ala. 70,277 So.2d 885 (1973); Hollenquest v. State, 290 Ala. 146,274 So.2d 613 (1973); Whatley, supra; James v. State, 22 Ala. App. 183,113 So. 648 (1927). Circumstantial evidence in arson cases is "`necessarily often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause.'" Speegle, supra, citing State v.Edwards, 173 S.C. 161, 175 S.E. 277 (1934).
Where the evidence is wholly circumstantial or in conflict, motive is a material concern. Jarrell v. State, 35 Ala. App. 256, 50 So.2d 767 (1949), reversed, 255 Ala. 128, 50 So.2d 774, affirmed, 255 Ala. 209, 50 So.2d 776 (1951); Harden v. State,211 Ala. 656, 101 So. 442 (1924). Motive can be proven by threats. Cunningham v. State, 14 Ala. App. 1, 69 So. 982 (1915).
The circumstances in the present case which tend to connect appellant with the crime charges against him are:
(1) The appellant's cell was the source of the fire.
(2) The appellant was in the cell when the fire started.
(3) The appellant had the opportunity in the booking room to obtain matches or cigarettes or some other device suitable for starting a fire.
(4) He did receive a cigarette from an unidentified officer while he was in the booking room.
(5) He could have hidden matches or cigarettes or some other incendiary device in his underwear which was never searched.
(6) He asked for cigarettes while he was in his cell and might have been given one by an officer or one of the four trustees who had access to his cell.
(7) The jailer, who was the only person on duty in the jail, could not see the cell from the radio room.
(8) The padding in the cell was highly flammable.
(9) There had never been any problem with the ceiling light in the cell, and the cell had been inspected and approved by the fire inspector about six months prior to the fire. Photographs of the light fixture and testimony concerning the cell's construction show that the light was embedded in the middle of a solid concrete ceiling. The light fixture was nowhere near the flammable padding, and the jury could have reasonably concluded that the light fixture had no connection with the cause of the fire.
(10) The appellant repeatedly threatened to burn the jailunless the officers took him to a doctor.
The first nine circumstances above would probably be sufficient, standing alone, to support an arson conviction. However, when coupled with the appellant's threats *Page 486 
to burn the jail, the inferences therefrom were sufficient to establish a prima facie case against him. Therefore, there was no error in submitting the case to the jury and in refusing to grant a new trial for insufficiency of the evidence. Morton, supra; Street v. State, 39 Ala. App. 190, 96 So.2d 680 (1957).
 II
The appellant took no exception to the oral charge of the trial court. However, he contends that the trial court erred in refusing to give the following written requested charges:
 "9. The Court charges the jury that the evidence in this case is partially circumstantial, and his innocence must be presumed by the jury until his guilt is established by the evidence, in all the material aspects in the case, beyond a reasonable doubt and to a moral certainty."
 "16. The Court charges the jury that a person charged with a felony should not be convicted, unless the evidence excludes to a moral certainty every reasonable hypothesis but that of his guilt; no matter how strong the circumstances are, they do not come up to the full measure of proof which the law requires, if they can be reasonably reconciled with the theory that the Defendant is innocent."
 "18. The Court charges the jury that part of the evidence in this case is circumstantial, and the Defendant's innocence must be presumed by you until the case is proven by the State against the Defendant in all material aspects and unless you so find from the evidence you cannot convict the Defendant."
 "19. The Court charges the jury that the evidence in this case is circumstantial, and his innocence must be presumed by the jury until his guilt is established by the evidence, in all the material aspects in the case, beyond a reasonable doubt and to a moral certainty."
If an oral charge is not as comprehensive as a party desires, then written requested instructions should be tendered to the trial judge which explain that party's theory of the case.Bowens v. State, 54 Ala. App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746, 309 So.2d 850.
Charges 9 and 19 are elliptical. Neither of those charges refers to "defendant's" guilt or innocence, but merely to "his" guilt or innocence.
 "An `ellipsis' is an omission from a construction of one or more words which are evidently understood but must be supplied to make the expression grammatically correct, or is the omission of words that are easily understood that are not necessary to express the meaning, but that are necessary for grammatical completeness. . . ." 14 Words and Phrases Ellipsis p. 360; State v. Staub, 182 La. 1040, 162 So. 766
(1935).
Thus, the use of the word "his" in the two charges may be understood to refer to the defendant, nevertheless standing alone without reference to other charges or to evidence extrinsic of the written charge itself, makes each charge elliptical and ungrammatical. It is not error to refuse to give an elliptical charge or an ungrammatical charge. Allen v.State, 20 Ala. App. 467, 103 So. 712 (1925), cert. denied212 Ala. 654, 103 So. 713; Owen v. State, 279 Ala. 281,184 So.2d 362 (1966).
In addition, the principle of law set out in Charges 9 and 19 was fairly and substantially covered in the trial court's oral charge to the jury concerning the presumption of innocence attending the accused until his guilt was established by the evidence beyond a reasonable doubt and to a moral certainty. Title 7, § 273, Code of Ala. 1940 (§ 12-16-13, Code of Ala. 1975).
The principle of law set forth in Charge 18 was adequately covered in the court's oral charge concerning the presumption of the defendant's innocence until the State's case is proven from the evidence. The proposition of law set out in that charge however is predicated upon the evidence being partially circumstantial in the instant case. There is no direct evidence in the instant case that the appellant set the fire. The correct principle of law applying to the *Page 487 
quantity and quality of circumstantial evidence necessary to convict is set out in Ex parte Acree, 63 Ala. 234 (1879) and has been consistently followed by the courts of this state since that time. The proposition of law set out in Charge 18 is not a correct statement of the principles enunciated in Acree.
Refused Charge 16 has been approved by the Supreme Court of this state, and the refusal to give that charge has been held to be error in many cases. In Wilson v. State, 243 Ala. 1,8 So.2d 422 (1942), the Supreme Court reversed the conviction of the appellant based upon insufficient circumstantial evidence. There the death charge was the result of a fire alleged to have been set by the appellant. That court quoted from Acree, supra, and found that a refused charge, identical to Charge 16 in the instant case, should have been given. In McCarty v. State,35 Ala. App. 201, 45 So.2d 175 (1950), this court held that it was reversible error to refuse to give a charge identical to refused Charge 16 in the instant case. The same charge was again approved in Holman v. State, 36 Ala. App. 474,59 So.2d 620 (1952). It was likewise quoted with approval in Johnson v.State, 42 Ala. App. 511, 169 So.2d 773 (1964) and in Harris v.State, 46 Ala. App. 497, 243 So.2d 770 (1970), however, the refusal to give that charge was held not to be reversible error because so little of the State's case derived from circumstantial evidence. Such cannot be said of the instant case where the whole of the evidence against the appellant was circumstantial.
It has been the tendency of this court of late to hold that such charges which are mere statements of legal principles, without instruction as to the effect upon or application to the issues, are abstract and may be refused. We have held this to be true even where a correct principle of law is set out. Such decisions have been based upon the longstanding rule in this state that requested instructions tendered in a criminal case should be written in such a form that they are hypothesized on a "belief from the evidence." A charge not so hypothesized is not predicated upon a consideration of all of the evidence in the case, and its refusal would normally be upheld by this court. Hudson v. State, Ala.Cr.App., 335 So.2d 208 (1976), cert. denied, Ala., 335 So.2d 211; Duchac v. State, 52 Ala. App. 327, 292 So.2d 135, cert. denied, 292 Ala. 251, 292 So.2d 139
(1974).
Regardless of the more recent trend, we are nevertheless bound by the rulings of the Alabama Supreme Court. We find that the identical language of Charge 16 has not only been approved by that court, but the refusal to give that charge under circumstances similar to the instant case, amounted to reversible error. Until the Supreme Court rules otherwise, we must follow suit. The appellant is therefore entitled to a new trial.
Reversed and Remanded.
All the Judges concur.