Edward Locke was indicted for the intentional murder of Pearly Jackson during the course of an arson in violation of § 13A-5-40(a)(9), Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The State and the appellant agreed to waive the jury's *Page 1344 
participation in the sentencing process and allowed the trial judge to impose sentence. The trial judge sentenced the appellant to life imprisonment without parole.
Matthew Davis, Chief of the Evergreen Volunteer Fire Department, testified that at 10:45 on the night of March 24, 1985, he received a call concerning a fire at the residence of Pearly Jackson off Cemetery Avenue in Evergreen, Alabama. When Davis and his men got to Jackson's house, it was on fire as was the roof of the house next door.
After the fire was extinguished, Davis inspected the house. He stated that the fire had progressed from the front to the back of the house. Inside the house, he found the body of Johnie Lee Dailey in the kitchen and the body of Pearly Jackson in the bathroom.
An autopsy was performed on the body of Jackson. It was determined that she died from smoke inhalation and carbon monoxide poisoning.
Kenneth Flowers testified that he was the Deputy State Fire Marshall for the Alabama Department of Insurance. He arrived at Jackson's residence at approximately 1:00 a.m. on March 25, 1985. He stayed at the site until daylight when he could examine the salvage of the structure.
Flowers testified that the house was a small, wood-framed, older dwelling with a tin roof and it was partially destroyed by fire. The front porch and the living room area sustained the most damage. Flowers stated that the damage lessened as one went from the front to the back of the house.
Flowers testified that the point of origin of the fire was the front porch. He found no electrical or gas outlets on the front porch. He did find an electrical wire which ran parallel to the joist where the living room and porch join. Flowers didn't find any evidence of accelerants.
Florestine Page testified that she lived at 216 Cemetery Avenue on the night of the fire. That night, the appellant and some other men were at her house. At some point, the appellant asked to borrow Eric Lett's cigarette lighter.
The appellant got the lighter and left. He returned ten or fifteen minutes later and told Lett that "he bet that Lett thought he wasn't going to return the lighter." The appellant then left again.
Shortly after the appellant left, Page went outside and saw the fire down the street. She lived a block away from Jackson's house. She went to Willie Lyon's house and told him to call the fire department.
Eric Lett testified that he was at Page's house on the night in question. He said the appellant asked him if he had a box of matches. Lett said that he didn't have any matches but he had a cigarette lighter. The appellant borrowed the lighter and left.
Lett went outside a few minutes later to see if the appellant was on the porch. The appellant wasn't there so Lett went back inside. A while later, the appellant came back to the house and returned the lighter. He said, "I guess you thought I weren't gone bring your lighter back." The appellant then left. Lett shortly heard the fire trucks.
Willodine Wallace testified that she worked for Jackson cleaning her house. Jackson was 84 years old. On the Wednesday before the fire on Sunday, the appellant came over to Jackson's house and asked her to drop some charges against him. Jackson told him that she wouldn't do it.
At 5:30 on the afternoon of the fire, Wallace saw the appellant at J.D. Rogers' house. The appellant asked Wallace if Jackson had dropped the charges. Wallace told him that she had not done so. The appellant said, "I'll see about that." (R. 61)
Willie Lyons and his wife, Geraldine, testified that they lived at 223 Cemetery Avenue. At approximately 10:00 or 10:30 on the night of the fire, they were walking home on Cemetery Avenue. They saw the appellant come out of the dead end alley that Jackson lived on. The appellant *Page 1345 
walked by the Lyons and they spoke. The appellant "grunted" and kept walking. He was walking real fast.
After the Lyons got home, Willie went outside on the porch. He thought he saw smoke. A few minutes later, Page came to their door and told them to call the fire department.
The next day Geraldine saw the appellant as she was driving home from work. The appellant tried to flag her down but she didn't stop. When she got out of her car at her house, the appellant was in her yard.
Geraldine was frightened and didn't want to talk to him. The appellant asked Geraldine, "Did you see me over here last night?" She replied, "It was so much going on, I don't remember." He then asked, "Did you speak to me last night?" and she said, "Yeah, Flap, I spoke to you last night." The appellant then said, "Well, I don't want nobody to know I was over here last night." (R. 71) Geraldine went hurriedly into her house.
Jean Riley, the Circuit Clerk of Conecuh County, Alabama testified that the case of the State of Alabama vs. Edward Locke was scheduled for March 25, 1985. Jackson was subpoenaed to appear as a witness in the case.
 I
The appellant contends the State failed to prove the corpus delicti of arson.
 "When the sufficiency of the evidence is in question, it is the court's duty to determine if there was legal evidence from which the jury could by fair inference find guilt. Morton v. State, Ala.Cr.App., 338 So.2d 423 (1976); Creel v. State, 53 Ala. App. 504, 301 So.2d 267 (1974). If there is such evidence, the jury's verdict should be upheld. Scroggins v. State, Ala.Cr.App., 341 So.2d 967
(1977); Trussell v. State, 57 Ala. App. 109, 326 So.2d 301 (1976). This court does not decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty, Trussell, supra, nor does it resolve conflicts in the evidence, Morton, supra.
 "The evidence is sufficient if the corpus delicti is proved. Speegle v. State, 51 Ala. App. 504, 286 So.2d 914 (1973). " 'In arson the corpus delicti consists first of a building burned; and second, that it was wilfully fired by some responsible person . . . and the guilt of defendant may be proven by circumstantial evidence as well as by direct evidence. . . .' (Citations omitted.) Whatley v. State, 37 Ala. App. 706, 75 So.2d 182
(1954).
 "Circumstantial evidence is sufficient as long as it is so strong and cogent as to show the defendant's guilt to a moral certainty and does not fairly permit an inference consistent with the defendant's innocence. Tanner v. State, 291 Ala. 70, 277 So.2d 885 (1973); Hollenquest v. State, 290 Ala. 146, 274 So.2d 613 (1973); Whatley, supra; James v. State, 22 Ala. App. 183, 113 So. 648
(1927). Circumstantial evidence in arson cases is ' "necessarily often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause." ' Speegle, supra, citing State v. Edwards, 173 S.C. 161, 175 S.E. 277 (1934).
 "Where the evidence is wholly circumstantial or in conflict, motive is a material concern. Jarrell v. State, 35 Ala. App. 256, 50 So.2d 767
(1949), reversed, 255 Ala. 128, 50 So.2d 774, affirmed, 255 Ala. 209, 50 So.2d 776 (1951); Harden v. State, 211 Ala. 656, 101 So. 442 (1924)."
Harris v. State, 358 So.2d 482, 485 (Ala.Crim.App.), cert. denied, 358 So.2d 487 (Ala. 1978).
The evidence presented at trial which is relevant to this issue includes: 1) The fire started on the front porch of the house. The only possible source of ignition near the front porch was an electrical wire that ran parallel to the joist between the living room and the front porch. However, the fire inspector stated that the point of origin of the fire was on the front porch, not at the point where the front porch and the living room join. He and the Evergreen Fire Chief testified that the house *Page 1346 
sustained the most damage on the front porch and lessened as one went from the front porch to the living room to the remainder of the house. 2) The appellant obtained a lighter from Lett at a house one block away from Jackson's house on the night in question and left with the lighter for a period of time. 3) The appellant was seen coming from the alley where Jackson lived around the approximate time the fire was discovered. The appellant seemed to be in a hurry. 4) The day after the fire, the appellant told Geraldine Lyons, who had seen the appellant the night before near Jackson's house, that he didn't want anybody to know that he was in the area in question the night before. 5) The appellant had a strong motive in this case. He was to stand trial the day after the fire on charges brought against him by Jackson. Jackson was supposed to be a witness against him in the trial. When the appellant learned on the afternoon of the fire that Jackson had not dropped the charges against him, he stated, "I'll see about that."
The facts and circumstances set out above are certainly sufficient proof of the corpus delicti of arson in this case.
 II
The appellant contends his motion for judgment of acquittal should have been granted because there was no proof that Jackson was killed. The evidence showed that Jackson died of carbon monoxide poisoning and smoke inhalation. The appellant had a motive for Jackson's death. The appellant's criminal agency in the arson of the house at issue was established as we discussed previously. There was clearly sufficient evidence from which the jury could conclude by fair inference, that this appellant was guilty of the offense charged. The trial judge's ruling on the motion for judgment of acquittal was therefore correct.
 III
On cross-examination, Lett testified that he had not been drinking on the day of the trial. After the State rested its case, defense counsel attempted to impeach Lett's credibility by offering the testimony of a deputy sheriff who would testify that he smelled alcohol on Lett's breath that morning. The trial judge refused to allow defense counsel to call the deputy for this purpose. The appellant contends this is error and we must agree.
"The credibility of a witness may be impeached by proof of his intoxication but only if such intoxication occurs either at the time the witness takes the stand to testify or at the time he observed the facts to which he is testifying."Myrick v. State, 508 So.2d 1215 (Ala.Crim.App. 1987) (quoting C. Gamble, McElroy's Alabama Evidence, § 141.01(2) (3rd ed. 1977)). The witness' intoxication may be proved through the testimony of a third party. McElroy's, supra at § 141.01(2).
The trial judge should have allowed defense counsel the opportunity to call the deputy to testify on this issue. His refusal amounts to error. However, Lett's testimony was identical to Page's testimony. His testimony was merely cumulative of Page's testimony. Thus, the error here is harmless because such is cumulative. Rule 45, A.R.A.P.
The appellant also contends that the trial judge also should have allowed the deputy to testify that he smelled alcohol on Page's breath. Our reasoning as stated earlier on this issue would apply equally as to Page if defense counsel had asked Page if she had been drinking that day. However, since Page was not asked and thus, never denied that she had been drinking, defense counsel should not be allowed to introduce the testimony of a third person who will testify that she had been drinking. There is no basis of error to reversal here.
 IV
The appellant contends a photograph of Jackson, taken during the autopsy, was improperly admitted into evidence because the State did not prove a chain of custody as to her body. The appellant did not object to the admission of the photographs on this ground. He objected on the grounds that the State had not laid a proper *Page 1347 
predicate because they did not show where the picture was taken. Thus, the appellant's specific objection to the admission into evidence of the photograph waives all other grounds of objection.Underwood v. State, 484 So.2d 520 (Ala.Crim.App. 1986).
Dr. Cumberland, who performed the autopsy, stated he took the photograph of Jackson during the autopsy and that it accurately showed the extent of Jackson's injuries at the time of her death. The photograph merely illustrated Cumberland's testimony concerning Jackson's injuries and its admission into evidence was not error.
The judgment of the trial court is therefore due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.