373 So.2d 342 (1979)
Johnny Reed COX
v.
STATE.
8 Div. 188.
Court of Criminal Appeals of Alabama.
June 5, 1979.
Rehearing Denied July 17, 1979.
*343 Joe M. Patterson, Jr., Florence, for appellant.
Charles A. Graddick, Atty. Gen., and Willis E. Isaac, Asst. Atty. Gen., for the State, appellee.
LEIGH M. CLARK, Retired Circuit Judge
Appellant was convicted of burglary in the second degree and of grand larceny, charged in separate counts of an indictment. The property allegedly burglarized was "Big Star 105, owned by or in the possession of Newton-Davis, Inc.," and the property allegedly stolen was "Two hundred fifty (250) cartons cigarettes of the value of One Thousand Six Hundred Dollars ($1,600.00), in the aggregate, the personal property of Newton-Davis, Inc." The court fixed the punishment at imprisonment for ten years.
The only issue on appeal is whether the evidence was sufficient to support the verdict. Defendant raised the point on the trial by a motion to exclude the evidence, which was denied, and by a motion for a new trial, which was overruled.
The undisputed evidence shows almost conclusively that there was a burglary and a larceny as charged in the indictment. About 2:40 A.M. July 24, 1978, Officer William Pratt of the Florence Police Department responded to an alarm that went off at Big Star 105, a store located in north Florence; he arrived at the store in about two minutes, checked the front and went to the back and noticed a hole knocked in the wall. He saw two persons run into the bushes behind the store. He identified one of them, a person other than defendant, who was afterwards apprehended. He never identified the other person. As the two left the store their paths were practically together, but soon thereafter they diverged.
Mr. Roger Davis, President of Newton-Davis, Inc., and manager of Big Store 105 was alerted. He arrived at the store at about 4:00 A.M. He and Officer Pratt and other officers found a large number of cartons of cigarettes that had been removed from the front end of the store out of the store through a hole therein about two feet by two feet in size. He estimated the number of cartons at "150 cartons or maybe 200 cartons," valued at "$4.70 per carton .. wholesale cost." According to the circumstances shown by his testimony, corroborated by others, most of the cartons of cigarettes had been transported in cardboard boxes and were in such cardboard boxes outside of the store at the time they were found by Mr. Davis and the officers.
The store was in a concrete block building. A sledge hammer with a broken handle was found near the store.
The only evidence connecting defendant-appellant with the crime was a fingerprint found on one of the cartons of cigarettes moved out of the store through the hole, from which the fingerprint was scientifically *344 lifted, carefully analyzed and expertly determined to match a known fingerprint of the middle finger of appellant's right hand. Were there no other circumstances relative to the fingerprint, we would have less difficulty in deciding the issue now before us.
The trend of the other circumstances is that appellant-defendant legally went in the store on occasions prior to the burglary and that his fingerprint that was found on the carton of cigarettes could have been placed thereon on one of said occasions. The pertinent evidence on the point is in the testimony of Mr. Roger Davis in which he said:
"Q Do you know the defendant in this case?
"A Yes.
"Q How long have you known him?
"A Maybe seven years or eight years.
"Q Did some of his relatives work for you at that time?
"A Yes, his brother is my Produce Manager.
"Q What is his name?
"A Jimmy Cox.
"Q How long had he been employed with you?
"A Approximately nine years.
"MR. TATE: I believe that's all.

"CROSS-EXAMINATION
"BY MR. PATTERSON:
"Q All right, Mr. Davis, do you run this store daily?
"A Yes.
"Q The cigarettes, where are they kept in the store?
"A In the front of the store in the check-out area.
"Q The store, is it square or rectangular?
"A Rectangular.
"Q Is this the front of the store, up in this end?
"A Yes.
"Q Where was the hole in the wall located in the store?
"A It was in the back room area, all the way to the back.
"...
"Q Now, Mr. Davis. These cigarettes that were up here, were they up where the general public could pick up a carton or a pack if they decided to buy it from you?
"A Yes.
"Q You say that Mr. Cox's brother does work at Big Star?
"A Yes.
"Q He has been with you how long?
"A Approximately 9 years.
"Q You don't know whether Mr. Cox has ever been in the store?
"A Yes, I know he has been in the store.
"Q He has been in the store?
"A Yes.
"Q Is he a customer of yours?
"A No, I don't think so.
"Q What has he been in there for?
"A The last time I remember he visited Jimmy. One time he applied for a job.
"Q But he has been in your store?
"A Yes."
Detective James White of the Florence Police Department testified that during the early morning of July 24 he obtained about "30 cartons" of cigarettes from the cartons found outside the store, numbering "around 250 to 300" and delivered the 30 cartons to Toxicologist and Laboratory Supervisor John Kilbourn of the Alabama Department of Forensic Sciences, in Florence.
Mr. Kilbourn testified that he dusted and processed all of the cigarette cartons submitted to him but found only two prints, which he lifted and submitted to the Alabama Bureau of Investigation, Identification Division.
Ms. Marietta Prevost, a certified latent fingerprint examiner with the Alabama Department of Public Safety, whose qualification was amply shown and not questioned, testified that one of the latent fingerprints submitted by Mr. Kilbourn was "made by the same person whose fingerprints appear on the fingerprint card bearing the name of Johnny Reed Cox and could not have been *345 made by any other person." On cross-examination, she said:
"Q Is there any way to tell when these prints were made by looking at the cardboard?
"A No, sir. There is not.
"Q Is that the only print you examined?
"A No, sir.
"Q So, you couldn't tell if these were made six weeks ago, two months ago or yesterday just by examining the prints?
"A No, sir.
"...
"Q If the defendant touched this State's exhibit 2 at any time, you could pick this print up from it if he touched it and left a print there?
"A Yes, sir.
"Q There is no way you can tell when it was touched from examining it?
"A No, sir."
The witness also testified that as to the other latent fingerprint submitted to her she was not submitted any known fingerprints that matched it.
The disagreement between the parties is not as to any principle of law involved, particularly the controlling principle that the defendant should not be convicted on circumstantial evidence unless the evidence excludes beyond a reasonable doubt and to a moral certainty every reasonable hypothesis but that of the guilt of the accused. Sumeral v. State, 39 Ala.App. 638, 106 So.2d 270 (1958); Bluth v. State, 38 Ala.App. 692, 92 So.2d 685 (1957); Whatley v. State, 37 Ala.App. 706, 75 So.2d 182 (1954). Mr. Justice Faulkner clearly summarized the hinge upon which the question turns in Tanner v. State, 291 Ala. 70, 71, 277 So.2d 885, 886 (1973):
"The legal principles involved are simple: (1) A conviction may be had on evidence which is entirely circumstantial, so long as that evidence is so strong and cogent as to show defendant's guilt to a moral certainty. Hollenquest v. State, 290 Ala. 146, 274 So.2d 613 (1973); James v. State, 22 Ala.App. 183, 113 So. 648 (1927). (2) The law is deeply solicitous that the guilty, and the guilty alone, shall be punished for crime; hence if circumstantial evidence fairly permits an inference consistent with innocence, it will not support a conviction. Carr v. State, 28 Ala.App. 466, 187 So. 252 (1939); Cooper v. State, 235 Ala. 523, 180 So. 102 (1938)."
It is hardly questionable that it could be theorized from the evidence that the fingerprint of defendant found on the carton of cigarettes was placed thereon by defendant while he was lawfully in the store before it was burglarized. This, however, does not preclude a jury issue on the question unless it can be said as a matter of law that such a theory or hypothesis is reasonable or the equivalent, that the "evidence fairly permits an inference consistent with innocence." (Tanner, supra). Although the necessary qualification of reasonableness, fairness, or the like, is not expressed in every instance and every case on the point, a close reading thereof contextually discloses that the qualification is subsumed. To hold otherwise would be in conflict with the clarification of the problem as stated in Crawford v. State, 112 Ala. 1, 26, 21 So. 214, 222 (1895):
"It is not every hypothesis of innocence, reasonable or unreasonable, possible or imaginary, the evidence must exclude, but only such hypotheses as are reasonable, springing from a consideration and comparison of the entire evidence. The former decisions approving the form of instruction before us are not regarded as authoritative, and many of them have been expressly overruled. Garrett v. State, 97 Ala. 18, 14 So. 327; Webb v. State, 106 Ala. 52, 18 So. 491."
To the same effect are Montgomery v. State, 160 Ala. 7, 49 So. 902 (1909); Moss v. State, 190 Ala. 14, 67 So. 431 (1914); Corbin v. State, 19 Ala.App. 439, 98 So. 132, 134, cert. denied, 210 Ala. 369, 98 So. 134 (1923); Kelley v. State, 32 Ala.App. 408, 26 So.2d 633, 637 (1946); Davis v. State, 36 Ala.App. 573, 62 So.2d 224, cert. denied, 258 Ala. 281, 62 So.2d 229 (1953). The cases cited uphold the action of the trial court in refusing defendant's requested written charges that would permit an acquittal of defendant *346 upon an unqualified hypothesis of innocence, that is, an unreasonable one. In the light of the many cases that have held such charges faulty, the necessity for the existence of reasonableness or the like in any hypothesis or theory of innocence to require an acquittal is emphasized by Harris v. State, Ala.Cr.App. 358 So.2d 482 (1978), wherein it was held to be prejudicial error to refuse such a charge if and when, as it was therein, properly qualified, the particular charge being:
"The Court charges the jury that a person charged with a felony should not be convicted, unless the evidence excludes to a moral certainty every reasonable hypothesis but that of his guilt; no matter how strong the circumstances are, they do not come up to the full measure of proof which the law requires, if they can be reasonably reconciled with the theory that the Defendant is innocent."
Our task is to determine whether as a matter of law the evidence can be reasonably reconciled with the theory that defendant is innocent or, in the language of Tanner, supra, whether the evidence "fairly permits an inference consistent with innocence." We hardly need to note in Webster's New International Dictionary (any ed.) the synonymity of "reasonably" and "fairly."
A significant fact is that only two fingerprints were found on a total of approximately ten percent of the cartons of cigarettes that were removed from the store, which seems to negate any theory that many people so handled cartons of cigarettes on display, and left them there, in such a way as to leave fingerprints thereon. For that reason alone, the chance that defendant did so is extremely minimal.
Although defendant had been in the store, there was no evidence that he was a customer of the store. Mr. Davis' testimony indicates, although it does not conclusively show, the contrary.
Although it cannot be said that it would not have been possible for the fingerprint on the carton to have been scientifically lifted therefrom after its longtime presence thereon, it is not likely that cartons of cigarettes for display in a store such as that of Big Star 105 would have remained on display for an indefinitely extended period of time.
Mr. Davis' testimony does not lead to a reasonable conclusion that many customers would handle cartons of cigarettes without buying them and taking them from the store. His testimony was that they were so displayed that "the general public could pick up a carton or a pack if they decided to buy it ...."
Assuming that defendant did touch the particular carton of cigarettes some time before the burglary of the store, the chance of his so grasping it, without buying it, as to leave a fingerprint thereon is infinitely small as compared to the likelihood of his leaving a fingerprint on a carton of cigarettes while transporting it from the front to the back of the store, through a hole in the wall, or in assisting another in that operation.
We conclude that it cannot be fairly inferred from the evidence that the fingerprint of defendant found on the carton of cigarettes was placed thereon by defendant prior to the burglary, that the evidence is not reasonably reconcilable with that theory. It follows, and we hold, that the evidence was sufficient for a finding by the jury that it excluded every reasonable hypothesis but that of defendant's guilt.
The trial court was not in error in denying defendant's motion to exclude the evidence or in overruling his motion for a new trial.
We find no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur, except BOOKOUT, J. who dissents with opinion.
*347 BOOKOUT, Judge, dissenting:
The circumstantial evidence in the instant case is not so strong and cogent as to show the appellant's guilt to a moral certainty, as per Tanner, supra.
The State did not prove that the appellant committed any illegal act. The State's proof only establishes that the appellant, at some prior time, touched one carton of cigarettes. The evidence also establishes that the appellant had been legally on the premises at times prior to the burglary, and that the cartons of cigarettes had been in a public place in the store at the front check-out counter where anyone may have touched them. This is completely insufficient to send a man to the penitentiary under our system of justice.
Judge Clark, the most able and esteemed author of the majority opinion, has previously written for this court in West v. State, 57 Ala.App. 596, 329 So.2d 653, cert. denied, 295 Ala. 427, 329 So.2d 658 (1976):
"... Proof of guilt beyond a reasonable doubt in the minds of the jury is essential to a conviction. For the submission of the case to a jury, there must be substantial evidence tending to prove all elements of the crime, a mere scintilla not being sufficient...." (Citations omitted.)
The instant proof is no stronger than that in Ladd v. State, Ala.Cr.App., 363 So.2d 1017 (1978), wherein this court unanimously reversed a conviction for buying, receiving or concealing stolen property where the only evidence connecting that defendant with the property was his fingerprints on the rear view mirror of the stolen vehicle. There, the vehicle had been stolen from a public parking lot and was later found abandoned on a public street. There, as here, the State's evidence that the appellant "at some undetermined point in time" touched the stolen property failed to prove or even raise a sufficiently strong inference that he was guilty of the crime charged.
Where the appellant had legitimately been on the premises prior to the burglary and where the merchandise had been displayed in a public place where he or anyone else may have touched it, the mere fact that two of his fingerprints are later discovered on that merchandise is completely insufficient to prove that he broke into the store and stole the merchandise. If this conviction stands, then shoppers should in the future wear gloves or else not handle merchandise lest it later be stolen and their fingerprints thereon condemn them to the penitentiary. I therefore most respectfully and earnestly dissent.