[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 805 
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, Billy Hale, was convicted of burglary in the third degree and of theft of property in the second degree. See Ala. Code 1975, §§ 13A-7-7 and 13A-8-4, respectively. The appellant's sentences of 28 years in the penitentiary for each conviction were to be served concurrently. The appellant raises three issues on appeal.
The following facts were adduced at trial. Before 8:00 a.m. on the morning of June 20, 1991, the manager of Decatur Firestone Tire and Rubber Company store arrived at work to discover the store had been burglarized. Someone had entered the store by breaking a lower window in the bay door to the automobile service area and then entered the customer showroom and office area by prying open the double doors separating the service area from the showroom. The store's VCR was laying on the showroom floor and approximately $292 in checks was missing from the store's safe.
Officer Mike Neville, a City of Decatur police officer, testified that he helped Detective Sgt. John Boyd, Jr., investigate the burglary. Neville testified that while investigating the scene just outside the service bay doors he noticed that a piece of glass from the bay door window had fingerprints on it. R. 49. He picked up the glass up by the edges and gave it to Boyd.
Boyd testified that he got the call about the burglary between 8:00 a.m. and 9:00 a.m. on June 20. According to Boyd, it appeared that some of the broken glass near the service bay door "had been pulled out of the frame and set down [next to the doors] instead of shattered out and scattered everywhere." R. 81. Boyd testified that there were fingerprints on one piece of glass that "really stood out." R. 82. He stated that the prints on this piece of glass "were very apparent" and that even Officer Neville, who was a rookie police officer, had noticed them. R. 84. Boyd testified that these prints were blatant because "there was a lot of pollen . . . and . . . dust in the air. . . ." He further explained that the glass "had some water spots on it and some pollen and some dust and these fingerprints were over all that. There wasn't any pollen or any dust [on top of the prints]. These were fresh prints." R. 83. Boyd stated that his training was in the collection of fingerprints and it was "just common sense and observation that led [him] to believe this was a fresh print." R. 83. *Page 806 
Boyd did not try to lift any fingerprints from the safe, from the floor around the safe, from the tool found laying next to the glass double doors that had been used to pry the doors open, or from the double doors or door casings. The only fingerprints Boyd lifted were those on the glass broken out of the bay window.
Carol Curlee of the latent fingerprint unit of the Alabama Bureau of Investigation identified the latent prints removed from the glass as being the appellant's right thumb print, right middle finger, right ring finger, and left thumb print. R. 64.
The appellant testified on his own behalf. He said that he was with his wife from about 6:00 p.m. on June 19 until he went to work at about 8:00 a.m. on June 20. He said that on the evening of June 19 he took his wife to dinner and to a nightclub, where they shot two games of pool before returning home and going to bed. He denied any involvement in the burglary and theft of the Firestone store.
The appellant further testified that he had been assistant manager at the Firestone store until about two months before the burglary. One of his duties as assistant manager was to close the store in the evenings and to make sure everything was locked. He said that before leaving at night he would check all doors, including the service bay door. However, he testified that when closing the bay doors he "[u]sually grabbed the ropes . . . or the door itself and pulled it down." R. 112. The window was about 18 inches from the bottom of the doors. Other duties included opening the store in the mornings, getting the deposits from the safe and taking them to the bank, selling tires, and changing tires when the store was busy. He testified that "luck or happenstance" was the only explanation he had for his fingerprints being on the glass over two months worth of accumulated pollen, dust, and other debris. R. 113.
 "Q. [The prosecutor]: Are you asking this jury to believe that by luck or happenstance your thumb print had been on one side of this glass, two fingers of your right hand was on the other side of this glass, that they were there since the pollen and rain and dust had gotten on there, for some reason your fingerprints were not covered up, and it was just luck or happenstance your fingerprints were found on both sides of this broken piece of glass?
 "A. [The appellant]: Sir, that's the explanation for any of it.
 "Q. How long had you been gone from Firestone on June 19, 1991?
"A. To my recollection, a couple of months."
R. 113.
The appellant also admitted to knowing the combination to the safe and to having eight prior felony convictions that occurred in 1983.
The appellant's wife essentially corroborated his alibi. She testified that at the time of trial they had been married for four and one-half years. She said that the night of June 19 stood out in her mind because the appellant had worked late every night during the month, except for the night of June 19, when he got home around 6:00 p.m. and told her he was taking her out for dinner. After dinner the couple played pool before going home around 10:00 p.m. or 10:30 p.m. She testified that the appellant was home with her all night. At 4:30 a.m. on June 20 she got up to go to work. R. 125.
 I.
The appellant contends that fingerprint evidence alone was insufficient to sustain his conviction and that Detective Sgt. John Boyd, Jr., should not have been allowed to give his opinion that the appellant's fingerprints found at the scene of the crime were "fresh."
 A.
Fingerprint evidence may be sufficient to cast doubt on a defendant's guilt. Atkins v. State, 497 So.2d 598 (Ala.Cr.App. 1986), discussed supra; Gratton v. State, 455 So.2d 189, 190
(Ala.Cr.App. 1984) ("The identity of the accused may be established by the discovery of his fingerprints at the scene."). Regarding the sufficiency of the fingerprint evidence to sustain a conviction, "the basic question must be whether or not the evidence *Page 807 
adduced is consistent with guilt and inconsistent with any reasonable hypothesis that the petitioner is innocent.Johnston v. State, 387 So.2d 891 (Ala.Crim.App.), cert. denied, 387 So.2d 905 (Ala. 1980)." Ex parte Williams,468 So.2d 99, 102 (Ala. 1985); see also Thompson v. State,494 So.2d 925, 929 (Ala.Cr.App. 1986).
The evidence presented in the present case is minimally sufficient to support the appellant's conviction. InAtkins v. State, 497 So.2d 598 (Ala.Cr.App. 1986), this court found the presence of Atkins fingerprints at the crime scene to be "minimally sufficient [to support his conviction] . . . by only the slightest margin." Atkins, 497 So.2d at 599600. Atkins was accused of stealing two shotguns and a rifle from a private residence where he worked as a farmhand. Within one hour of the report of the theft, police lifted the appellant's fingerprints from the inside of the victim's bedroom windowpanes and from the inside of the metal screen covering the window. Outside this window a limb was caught between the screen and the window and the grass beneath the window was "freshly tromped down." Also a footprint was found on top of a table directly under the window inside the house. Two days before the burglary, the owner of the guns had sent Atkins into the house to get a pack of cigarettes. This court stated:
 "The general rule is stated in Annot., 28 A.L.R.2d 1115, 1150, 1154 (1953):
 " 'Proof that finger, palm, or bare footprints found in the place where a crime was committed, under such circumstances that they could only have been impressed at the time the crime was committed, correspond to those of the accused, may be sufficient proof of identity to sustain a conviction.'
 " 'To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed.'
"See also 30 Am.Jur.2d Evidence § 1144 (1967)."
Atkins, 497 So.2d at 599. This court reasoned that "minimally sufficient" evidence had been established in Atkins because,
 "Here, a private residence is involved. The jury was authorized to find that the fingerprints were made at the time the crime was committed from the facts that the grass outside the window was 'freshly tromped down,' that the weapons were 'just missing,' that Atkins never worked inside or around the house, although he had been lawfully inside the house two days earlier to retrieve a pack of cigarettes, that a bush was caught between the screen and the window, that the presence of the fingerprints was unexplained, and that Atkins' fingerprints were found on the inside of both the screen and the window. The fact that Atkins was lawfully in the house retrieving a pack of cigarettes two days before the burglary dose not explain how or why his fingerprints were on the window and screen. Here, no plausible theory consistent with innocence exists for the presence of Atkins' fingerprints. See Blanco v. State, 485 So.2d 1217, 1220
(Ala.Cr.App. 1986); Hall v. State, 488 So.2d 1386, 1390 (Ala.Cr.App. 1986)."
Atkins, 497 So.2d at 599.
In this case, in addition to finding the appellant's fingerprints at the burglar's point of entry into the store, the jury could have inferred that the fingerprints were made when the crime was committed because the burglary had occurred within approximately 14 hours of discovery of the prints; the fingerprints appeared fresh; the appellant had not had an opportunity to touch the bay door in two months; the appellant's prints were found on both sides of the glass; and there was no plausible explanation for the prints, which appeared to be new, in a configuration consistent with grasping the glass. If the jury determined that the fingerprints appeared less than two months old, then the appellant's guilt was the only reasonable conclusion. The testimony concerning the relative age of the prints is discussed in part I.B. of this opinion.
In Cox v. State, 373 So.2d 342, 346 (Ala.Cr.App. 1979), this court held "that it cannot be fairly inferred from the evidence that the *Page 808 
fingerprint of defendant found on the carton of cigarettes was placed thereon by defendant prior to the burglary, that the evidence is not reasonably reconcilable with that theory. It follows, and we hold, that the evidence was sufficient for a finding by the jury that it excluded every reasonable
hypothesis but that of defendant's guilt (emphasis in Cox)." In reaching this result the Court made the following presumptions and inferences.
 "A significant fact is that only two fingerprints were found on a total of approximately ten percent of the cartons of cigarettes that were removed from the store, which seems to negate any theory that many people so handled cartons of cigarettes on display, and left them there, in such a way as to leave fingerprints thereon. For that reason alone, the chance that defendant did so is extremely minimal.
 "Although defendant had been in the store, there was no evidence that he was a customer of the store. Mr. Davis' testimony indicates, although it does not conclusively show, the contrary.
 "Although it cannot be said that it would not have been possible for the fingerprint on the carton to have been scientifically lifted therefrom after its longtime presence thereon, it is not likely that cartons of cigarettes for display in a store such as that of Big Star 105 would have remained on display for an indefinitely extended period of time.
 "Mr. Davis' testimony does not lead to a reasonable conclusion that many customers would handle cartons of cigarettes without buying them and taking them from the store. His testimony was that they were so displayed that 'the general public could pick up a carton or a pack if they decided to buy it. . . .'
 "Assuming that defendant did touch the particular carton of cigarettes some time before the burglary of the store, the chance of his so grasping it, without buying it, as to leave a fingerprint thereon is infinitely small as compared to the likelihood of his leaving a fingerprint on a carton of cigarettes while transporting it from the front to the back of the store, through a hole in the wall, or in assisting another in that operation."
Cox, 373 So.2d at 346. In this case the appellant's fingerprints were the only prints on the glass, despite the fact that he had not worked at the Firestone store for two months; the appellant had returned to the Firestone store as a customer since leaving his job, but on that occasion he had no reason to touch the service bay doors; the prints were discovered at the point of entry; it is extremely unlikely that "very apparent" fingerprints would be on a piece of glass after two months of exposure to the elements; the window was 18 inches from the bottom of the door, making it impossible for the appellant to touch the glass so as to leave the prints in the configuration described unless the glass was broken from its frame.
In Hall v. State, 488 So.2d 1386, 1390 (Ala.Cr.App. 1986), this court held, "Under the facts presented in this case, the 'illegal and unauthorized entry' by the appellant into Ms. Miller's home was the only 'reasonable explanation' for the presence and position of the appellant's fingerprints. Davis v.State, 418 So.2d 959, 961 (Ala.Cr.App. 1982)."
 "According to the evidence presented by the State, the appellant's fingerprints were positioned in such a manner as to indicate that he was 'outside of the house entering into the house.' The window was approximately six feet from the ground; this fact precluded the possibility that the appellant could have had some 'casual contact' with the window from the outside. (Additionally, the appellant did not testify that he had touched the window from the outside.) Testimony presented at trial tended to show that: (1) the appellant was observed near the scene of the crime shortly before and shortly after the crime had been committed; (2) the appellant's fingerprints were found at the 'point of entry' of the burglarized home; (3) the appellant's fingerprints were positioned in such a manner as to indicate that he was entering the home at the time the prints were made; and (4) the appellant's witnesses merely testified that he was inside the bedroom at some point." *Page 809 
Hall, 488 So.2d at 1390. In a footnote, the court in Hall
distinguished its ruling from Ex parte Williams, supra, based on the facts.
 "In Williams, the sole link between the accused and the crime was the presence of his fingerprints on certain packages of film. According to the evidence presented at trial in Williams, others had access to the film and thus the circumstantial evidence was insufficient to uphold the conviction. In [Hall], however, there was no reasonable explanation for the fact that the appellant's fingerprints indicated that he was entering the house from the outside of the window. The only reasonable inference from the evidence presented at trial was that the appellant actually committed the crime."
Hall, 488 So.2d at 1391, n. 6. The same is true in this case. The appearance of the prints, despite their exposure to the elements, indicated that they were made well after the appellant had left his job the at the Firestone store. The presence of his "fresh" fingerprints on the glass indicates his guilt. Also, as stated above, this particular window was 18 inches from the bottom of the door, making it impossible for the appellant to casually touch the glass on both sides unless the glass was broken from its frame.
In the present case the presence of the appellant's fingerprints at the point of entry into the Firestone store was sufficient to sustain a conviction for burglary and theft. However, in addition to the presence of his fingerprints, the jury also could consider the fact that the appellant knew the combination to the safe, which had been opened during the burglary.
 B.
The appellant also argues that Detective Sgt. John Boyd, Jr., should not have been allowed to give his opinion regarding the age of the appellant's fingerprints found on the piece of glass. The appellant's "supplemental amendment to motion for new trial" included the affidavit of Warren R. Stewart, III, a forensic Investigator "I" in the trace evidence/latent print section of the Alabama Department of Forensic Sciences. Stewart has testified in other cases as an expert in the field of fingerprint techniques and classification. It was Stewart's opinion that "it is impossible to determine the date of the impression of a latent fingerprint on a surface, unless it is specifically known when the last time the surface was thoroughly cleaned." C.R. 107.
Boyd's testimony regarding the fingerprints was admissible. Boyd's statement that the prints "were over all that [pollen and dust]" and "[t]here wasn't any pollen or any dust [on top of the prints],"
 " 'is a statement of fact, not of opinion. . . .[I]t is a matter readily ascertainable by any person with ordinary powers of observation and is not necessarily a subject requiring expert testimony.' . . . [the] testimony was not violative of the traditional rule in Alabama that a lay witness can testify to facts which he observed but cannot testify to opinions, conclusions, deductions, or inferences which are based upon facts. See C. Gamble, McElroy's Alabama Evidence, § 127.01(1) (3d ed. 1977)."
Tice v. State, 460 So.2d 273 (Ala.Cr.App. 1984) ("Although Officer Smith was not qualified as an expert in tire track analysis, his testimony was admissible. No special training or expertise is required of a witness to identify the tread of tires and the tracks they leave.").
Boyd's opinion that the prints were "fresh" was properly admitted because it constituted a "collective fact" or "shorthand rendition of fact."
 " 'A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact. This variety is most commonly referred to as the collective fact exception and arises when the facts observed by the witness are so many or so inexpressible that he is allowed to give the jury his opinion. His opinion is conceived of as being a shorthand way of giving the facts and, consequently does not constitute a violation of the opinion evidence rule.' C. Gamble, McElroy's Alabama Evidence, Section 127.01(3) Variety No. 7 (3rd ed. 1977)." *Page 810 
Murrell v. State, 377 So.2d 1102, 1106 (Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
In Murrell a police officer was properly allowed to "state his opinion as to how long certain candy wrappers, cake wrappers, and milk cartons, which he found at the scene of the double murder, had been there." The officer testified that "In [his] opinion they had been there only a short time. . . . they hadn't been there too long." His opinion was based on the fact that there were "crumbs around the wrappers . . . [that] were soft." This court found that this testimony was admissible as a "collective fact" or a "shorthand rendition of fact" because "[h]is finding soft crumbs around the wrappers provided a logical basis for his opinion," Murrell, 377 So.2d at 1106. The same is true in this case. Boyd's testimony that he had been lifting prints for over 12 years and that he could see that the prints were impressed on top of pollen and dust provided a logical basis for his opinion.
As previously stated, "To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed." Atkins, 497 So.2d at 599.
 "Williams v. State, 468 So.2d 99 (Ala. 1985) is dispositive of this case. In Williams, the Alabama Supreme Court stated that circumstantial evidence will support a finding of guilt if ' "the evidence is so strong and cogent as to show defendant's guilt to a moral certainty," Tanner v. State, 291 Ala. 70, 277 So.2d 885 (1973); Gantt v. State, 356 So.2d 707 (Ala.Crim.App.), cert. denied, 356 So.2d 712 (Ala. 1978), and the circumstances producing the moral certainty of the accused's guilt "are incapable of explanation on any reasonable hypothesis," Jarrell v. State, 255 Ala. 128, 50 So.2d 774 (1949); Sumeral v. State, 39 Ala. App. 638, 106 So.2d 270 (1958).' Williams, supra [468 So.2d] at 101."
Thompson, 494 So.2d at 928. There was no other reasonable hypothesis other than guilt. There was no explanation for how the appellant's fingerprints got on the glass, which he had not had an opportunity to touch in two months. There was no explanation for how the appellant's fingerprints where impressed on top of the debris found on the glass. There was no explanation for the configuration of the prints, which was consistent with Boyd's theory that the glass had been grasped and removed from its frame. Testimony regarding the fingerprints was properly admitted into evidence and provided sufficient evidence to sustain a conviction.
 II.
The appellant contends that the totality of the errors made by his trial attorney constituted ineffective assistance of counsel. The appellant's claims of ineffective assistance of counsel, presented in a supplemental amendment to motion for new trial filed pursuant to Ex parte Jackson, 598 So.2d 895
(Ala. 1992), are preserved for review. The appellant raises three instances of alleged ineffective assistance of counsel that he maintains resulted in prejudicial error.
 A.
The appellant contends that his trial attorney failed to object to Sgt. Boyd's stating as a fact that the fingerprints found at the point of entry into the Firestone store where "fresh." The appellant argues that Boyd's testimony was a factual conclusion, which was for the jury alone to consider, and that a timely objection would have eliminated this testimony because Boyd lacked the necessary qualifications to render such an opinion. "[W]ithout Boyd's testimony that the fingerprints found were fresh, the State would have lost the inference that the prints were impressed at the time of the crime and not on an earlier occasion in a totally innocent manner. The loss of this inference before the jury would have been devastating to the State's case and would have probably resulted in a different outcome or warranted a timely motion for judgement for acquittal. However, trial counsel at no time ever made such a motion during the trial or afterwards." Appellant's brief at page 31. This issue was presented to the trial court by appellate counsel in a post-trial motion, which was denied. The appellant did not *Page 811 
suffer any prejudice because the issue was presented to the trial court. Furthermore, no error was committed for failure to object to this testimony for the reasons discussed in part I of this opinion.
 B.
The appellant contends that trial counsel committed prejudicial error by neglecting to make a motion for a judgment of acquittal or to object to the sufficiency of the evidence either at the end of the State's case-in-chief or at the close of all the evidence. The appellant argues that the State had offered only insufficient circumstantial evidence, which, he says, failed to exclude every reasonable hypothesis except that of guilt. The appellant argues that the failure to make these motions was outside the wide range of professional and competent assistance and cannot be classified as a strategic decision. Appellate counsel placed this issue before the trial court in the appellant's post-trial motion for a new trial and his amended motion for a new trial. The trial court denied appellant's motion for a new trial after a hearing. The appellant has suffered no prejudice by trial counsel's failure to raise these issues during trial.
 C.
The appellant contends that trial counsel committed prejudicial error when he informed the jury during voir dire that the appellant had prior felony convictions and then failed to ask for a limiting instruction to the effect that such evidence went to the appellant's credibility and was not substantive evidence of guilt in this case and could not be considered in determining guilt. Also, according to the appellant, trial counsel did not object to the trial court's failure to similarly instruct the jury during its charge to the jury. According to the appellant, without a limiting instruction there was a reasonable probability that the jury considered the appellant's prior convictions as substantive evidence of his guilt in the present case. According to the appellant, if trial counsel had properly requested the proper charge and had objected to the trial court's refusal to give the charge, this court would have found reversible error. This issue was not preserved for appellate review in any of the appellant's post-trial motions filed pursuant to Ex parteJackson, and is waived on direct appeal.
 III.
The appellant contends that the trial court erred by refusing to grant the appellant's motion for a new trial on the grounds of newly discovered evidence. The appellant's motion for a new trial presented the sworn affidavits of two individuals stating that they saw the appellant dining with his wife in a restaurant on June 19.
 "The granting or denial of a new trial on the ground of newly discovered evidence is a decision resting largely within the sound discretion of the trial court and the decision will not be reversed on appeal unless it is clearly shown that the trial judge abused his discretion. Snider v. State, 473 So.2d 579, 580
(Ala.Cr.App. 1985); Perry v. State, 455 So.2d 999, 1003 (Ala.Cr.App. 1984). Robinson v. State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala. 1980). In order to establish the right to a new trial on the grounds of newly discovered evidence, appellant must show that the evidence has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, that it is not merely cumulative or impeaching, and that the evidence is such that it will probably change the result if a new trial is granted. Baker v. State, 477 So.2d 496, 504 (Ala.Cr.App. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340
(1986); Willis v. State, 447 So.2d 199, 202
(Ala.Cr.App. 1983); Bland v. State, 390 So.2d 1098 (Ala.Cr.App.), cert. denied, 390 So.2d 1109
(Ala. 1980), cert. denied, 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1981).
 "Griffin v. State, 500 So.2d 83, 91 (Ala.Cr.App. 1986).
". . .
 "A decision on a motion for a new trial rests largely within the discretion of the *Page 812 
trial court, and in reviewing such a decision this court will indulge every presumption in favor of the correctness thereof. Baker v. State, 477 So.2d 496, 504 (Ala.Cr.App. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986)."
Brownlee v. State, 545 So.2d 151 (Ala.Cr.App. 1988), aff'd,545 So.2d 166 (Ala. 1989), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989).
The appellant has not shown how the testimony of two witness who corroborated his story that he went out to eat on June 19 changes the result of the trial. One affiant stated that the appellant was in the restaurant when the affiant left at 10:15 p.m. The other affiant did not specify a time. The appellant's wife testified that the couple returned home on June 19 at 10:30 p.m. Even if all of this is true, it is not exculpatory. The crime could have been committed at any time between the closing of the Firestone store on June 19 and 8:00 a.m. on June 20.
Based on the foregoing, the appellant's conviction is affirmed.
AFFIRMED.
All the Judges concur.