27 So.3d 600 (2008)
Joseph Lee LEWIS
v.
STATE of Alabama.
CR-07-0072.
Court of Criminal Appeals of Alabama.
October 31, 2008.
Opinion on Return to Remand May 1, 2009.
Rehearing Denied June 19, 2009.
Certiorari Denied August 21, 2009 Alabama Supreme Court 1081272.
*601 William Gregory Hughes, Mobile, for appellant.
Troy King, atty. gen., and Laura I. Cuthbert, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Joseph Lee Lewis, was convicted of attempting to murder Leon Dunklin, a violation of §§ 13A-6-2 and 13A-4-2, Ala.Code 1975. He was sentenced to 98 years and 1 day in the state penitentiary.
The State's evidence tended to show the following: On July 14, 2006, Officer Roderick Cotton of the Mobile Police Department was dispatched to a residence on Edwards Street in Mobile. When he arrived at the house he found Leon Dunklin in one of the bedrooms; Dunklin was kneeling by the side of a bed holding his head in his hands. Officer Cotton testified that Dunklin had a severe head wound, that he had a large hole in the left side of his head, and that it looked like a portion of his nose was also missing. Dr. Herb Phelan, a trauma surgeon at the University of South Alabama Medical Center where Dunklin was taken for treatment, testified that Dunklin's left eye was missing. He said that Dunklin would have died as a result of the gunshot wound without immediate medical care.
Carolyn Edwards testified that on July 14, 2006, Dunklin and Lewis were living at her house. She said that she was sitting on the front porch when Dunklin arrived at the house with lunch. Dunklin went to Edwards's bedroom to retrieve a soda from under her bed. Lewis was also in the house. She said that while she on the porch she heard raised voices and then a "pow," which sounded like a gunshot.
Okenia Chambers, a home health-care worker who had been helping Edwards and who was at the house when the incident occurred, testified that Lewis left the house after she heard a "pop" and Lewis said "That m____f___ was f___ with me," and "You're goddamn right I shot him."
*602 Dunklin testified that when he came to Edwards's house with lunch he went to Edwards's bedroom to retrieve a soda that she kept stored under her bed. He said that when he was in Edwards's bedroom Lewis came in and told him that his father did not like Dunklin. He said that he told Lewis that he did not have time for such stupidness and that Lewis then shot him. Dunklin testified that Lewis had been drinking when the shooting occurred.
Detective Russell Hardeman of the Mobile Police Department testified that he first interviewed Lewis outside of Edwards's house and then again at the police station. Detective Hardeman said that he advised Lewis of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights, that Lewis agreed to speak with him, that Lewis was coherent, and that Lewis appeared to understand his rights.
Lewis gave Detective Hardeman several versions of the events leading to Dunklin's shooting. Lewis first said that he and Dunklin were "tussling," that Dunklin had a gun, that he grabbed it, and that the gun went off, hitting Dunklin. Next he said that Dunklin came out with a gun, that he grabbed it, and that the gun went off. There were also discrepancies in Lewis's statements to police concerning the location of the shooting. Lewis first said that Dunklin came into his room with a gun. Next he said that he was in the kitchen when Dunklin came into that room with a gun. Finally, Lewis said that he was in Edwards's room when Dunklin came into that room waving a gun.
Lewis argues that the circuit court erred in denying his motion to suppress the statements he made to Detective Hardeman without first conducting a suppression hearing. He cites the Alabama Supreme Court case of Ex parte Jackson, 836 So.2d 973 (Ala.2001), in support of this argument.
Approximately one month before trial Lewis moved to suppress the statements he had made to Detective Hardeman. He asserted that he was intoxicated at the time of the statements, that he lacked the capacity to appreciate his constitutional rights, and that the statements should be suppressed because they were involuntary. He also requested that a hearing be held on the motion. On the day of trial Lewis withdrew his motion to suppress.
However, the record shows that during trial Lewis renewed his motion to suppress on the same grounds argued in the written motion. The circuit court denied the motion without holding a hearing, after stating for the record that the motion was untimely.
Initially, we note that the motion to suppress was not untimely. Although the better practice is to raise a motion to suppress before trial, we have held that "a pretrial motion to suppress is not necessary, and that objection to the introduction of illegally obtained evidence may be made for the first time when illegally obtained evidence is offered at the trial." Biggs v. State, 346 So.2d 467, 469 (Ala.Crim.App. 1976).
Rule 104(c), Ala.R.Evid.,[1] states:

*603 "In criminal cases, hearings on the admissibility of confessions or evidence alleged to have been obtained unlawfully shall be conducted out of the hearing and presence of the jury. Hearings on other preliminary matters shall be conducted out of the hearing and presence of the jury when the interests of justice require."
(Emphasis added.)
In Ex parte Jackson, 836 So.2d 973 (Ala. 2001), the Alabama Supreme Court explained the rationale behind requiring a hearing on the voluntariness of a confession outside the presence of a jury.
"Jackson requested a hearing to determine the admissibility of his statement, and the trial court denied him the opportunity to present evidence. Consequently, Jackson was deprived of his chance to testify about the circumstances relating to the voluntariness of his statement. If the trial court had conducted a hearing, Jackson could have testified and presented evidence indicating that the statement was not voluntarily made, without being subjected to cross-examination on other issues. Rule 104, Ala.R. Evid. If Jackson had testified in the hearing, conflicting evidence might have been presented to rebut the state's evidence of voluntariness. Therefore, in accordance with Duncan [v. State, 278 Ala. 145, 176 So.2d 840 (1965) ], Smith [v. State, 554 So.2d 451 (Ala.1989)], and Felder [v. State, 470 So.2d 1321 (Ala.Crim.App.1984) ], we hold that the trial court erred in determining the admissibility of Jackson's statement without conducting a hearing."
Jackson, 836 So.2d at 975.
The Jackson court explained that the proper remedy is not to immediately order a retrial but to first remand the case to the lower court for that court to hold a hearing on the issue of the voluntariness of the defendant's confession. As the Supreme Court stated:
"Jackson argues that in light of the United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and this Court's holding in Smith [v. State, 554 So.2d 451 (Ala.1991) ], this error requires that the case be remanded for an evidentiary hearing. We agree.
"In Jackson v. Denno, the defendant's statement was admitted into evidence without a hearing, outside the presence of the jury, to determine its admissibility. The defendant testified at trial that his statement was coerced. The trial court permitted the jury to determine the voluntariness of the statement. The United States Supreme Court held that the defendant was entitled to a posttrial evidentiary hearing, rather than a new trial, to determine whether the confession was voluntary.
"In Smith, the trial court admitted the defendant's statements made at the scene of the accident, without conducting a hearing outside the presence of the jury to determine their admissibility. The Court of Criminal Appeals held that the trial court erred in not conducting a hearing outside the presence of the jury and that the defendant was entitled to a new trial. This Court, however, applying the rationale in Jackson v. Denno, ordered that the case be remanded for a evidentiary hearing to determine the admissibility of the statements.
"In accordance with Smith, we remand this case for a hearing to determine the admissibility of Jackson's statement. If, after the hearing, the trial court determines that Jackson's statement was voluntarily made and was properly admitted into evidence for the jury's consideration, a new trial is *604 not required. See Jackson v. Denno, 378 U.S. at 393-94, 84 S.Ct. 1774 (stating that if the statement was properly admitted into evidence, `we see no constitutional necessity at that point for proceeding with a new trial, for [the defendant] has already been tried by a jury with the confession placed before it and has been found guilty'). However, if the trial court determines that Jackson's statement was not voluntary and therefore was not admissible into evidence, then there must be a new trial, at which the statement is not admitted into evidence."
Jackson, 836 So.2d at 975-76.
For the reasons set out by the Alabama Supreme Court in Ex parte Jackson, we remand this case to the Mobile Circuit Court for that court to hold a hearing on Lewis's motion to suppress his statements to police. If the motion is granted, the circuit court is directed to set aside Lewis's conviction and sentence and to grant him a new trial. See Jackson. Due return should be filed in this Court within 60 days from the date of this opinion.[2]
REMANDED WITH INSTRUCTIONS.
BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ., concur. WELCH, J., concurs in the result.

On Return to Remand
PER CURIAM.
The appellant, Joseph Lee Lewis, was convicted of attempted murder and was sentenced to 98 years and 1 day in prison. Lewis appealed his conviction to this Court. On October 31, 2008, we remanded this case to the Mobile Circuit Court for that court to hold a hearing on Lewis's motion to suppress his statements to police. Lewis v. State, [Ms. CR-07-0072, October 31, 2008] 27 So.3d 600 (Ala.Crim. App.2008). The circuit court held a hearing and denied Lewis's motion to suppress. This case is now before this Court on return to remand.
In our original opinion remanding the case we stated that Leon Dunklin was shot during an altercation between Dunklin and Lewis that occurred at Carolyn Edwards's home.[1] Lewis gave several statements to police concerning the events leading to the shooting. Lewis first said that he and Dunklin were "tussling," that Dunklin had a gun, that Lewis grabbed it, and that the gun went off, hitting Dunklin. He then said that Dunklin came out of a room with a gun, that he grabbed it, and that the gun went off. There were also discrepancies in Lewis's statements to police concerning where the shooting occurred. Lewis first said that Dunklin came into Lewis's room with a gun. Next Lewis said that he was in the kitchen when Dunklin came into that room with a gun. Finally, Lewis said that he was in Edwards's room when Dunklin came into that room waving a gun.

I.
Lewis argued in his brief to this Court that the circuit court erred in not holding a suppression hearing because there was evidence that he was intoxicated at the time he made his statement to police. Lewis did not file a brief to this Court on return to remand.
At the suppression hearing Detective Mack Hardeman of the Mobile Police Department testified that on July 14, 2008, *605 the date of the offense, he interviewed Lewis. He said that at around 1:50 p.m., at the scene of the shooting, he first spoke to Lewis and that he read Lewis his Miranda[2] rights. He noticed that Lewis smelled of alcohol and he asked Lewis if he had been drinking. Lewis replied that he had started drinking at 8:00 a.m. that morning and "maybe drank" a "sixpack." Detective Hardeman further testified that he had frequently observed people who were intoxicated and that he felt that Lewis "knew what he was doing" and that he "never got the impression that Lewis did not understand what was happening." Hardeman said that he spoke to Lewis about one hour later at police headquarters. He said that at no time did anyone coerce or threaten Lewis nor did they offer him any inducements to speak to police.
The defense called Diane Murray, Lewis's wife, to testify at the suppression hearing. She said that on the day of the shooting Lewis came into the kitchen of Edwards's home and "stumbled" into her and that he was drunk. Murray said that this occurred before 1:00 p.m.
At the end of the hearing, the circuit court stated:
"I find that Detective Hardeman has been an experienced police officer who has taken, as he has testified, maybe upwards of a hundred statements. I think he has testified very candidly that he smelled alcohol on this man, and he has testified that, in his judgment, he was under the influence.
"The word `drunk' has been thrown around fairly liberally here in this hearing, but I don't think that Detective Hardeman testified that this man was drunk, whatever that means legally.
"This Court, both as a prosecutor, defense lawyer and a judge, has never found it a requirement to give a PEI, or a Draeger, or anything else to a defendant before you take a statement. And the reliability of the detective who took this statement in judging whether or not this defendant voluntarily, intelligently, and knowingly waived his rights and gave the statement, I am going to defer to that. And I am going to deny your motion."
(Order on remand, p. 33-34.)
When determining whether a statement is correctly received into evidence at trial, we use the standard set out by the Alabama Supreme Court in McLeod v. State, 718 So.2d 727 (Ala.1998). The Court stated:
"For a confession, or an inculpatory statement, to be admissible, the State must prove by a preponderance of the evidence that it was voluntary. Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985). The initial determination is made by the trial court. Singleton, 465 So.2d at 445. The trial court's determination will not be disturbed unless it is contrary to the great weight of the evidence or is manifestly wrong. Marschke v. State, 450 So.2d 177 (Ala.Crim.App. 1984)....
"The Fifth Amendment to the Constitution of the United States provides in pertinent part: `No person... shall be compelled in any criminal case to be a witness against himself....' Similarly, § 6 of the Alabama Constitution of 1901 provides that `in all criminal prosecutions, the accused ... shall not be compelled to give evidence against himself.' These constitutional guarantees ensure that no involuntary confession, or other inculpatory statement, is admissible to *606 convict the accused of a criminal offense. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968).
"It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In Culombe, 367 U.S. at 602, 81 S.Ct. at 1879, the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, `if his will has been overborne' by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added).
"The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the `totality of the circumstances.' Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant's will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380 (Ala.Crim. App.1990) (stating that, to admit a confession, a court must determine that the defendant's will was not overborne by pressures and circumstances swirling around him); Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978) (stating that the true test to be employed is `whether the defendant's will was overborne at the time he confessed') (emphasis added)."
McLeod, 718 So.2d at 729 (footnote omitted).
In regard to intoxication, we have stated:
"`"[U]nless intoxication, in and of itself, so impairs the defendant's mind that he is `unconscious of the meaning of his words,' the fact the defendant was intoxicated at the time he confessed is simply one factor to be considered when reviewing the totality of the circumstances surrounding the confession." Carr v. State, 545 So.2d 820, 824 (Ala.Cr.App. 1989). "The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility and evidence of the confession, but may affect its weight and credibility." Callahan v. State, 557 So.2d 1292, 1300 (Ala.Cr. App.), affirmed, 557 So.2d 1311 (Ala. 1989).'"
State v. Austin, 596 So.2d 598, 601 (Ala. Crim.App.1991).
After examining the transcript of Lewis's statements and the testimony at the suppression hearing, we agree with the circuit court that there is no indication that Lewis was so intoxicated that his statements were rendered involuntary. The circuit court did not err in admitting Lewis's statements to police.
We will now address the remaining issue raised in Lewis's brief.

II.
Lewis next asserts that the circuit court erred in allowing Detective Hardeman *607 to testify that, in his opinion, events could not have happened in the manner Lewis described. Such testimony, Lewis argues, went to the issue of Lewis's credibility and improperly invaded the province of the jury.
During Detective Hardeman's testimony, the following occurred:
"Q [Prosecutor]: Were there inconsistencies in his statements?
"A [Hardeman]: Inconsistencies? Yes, sir.
"Q [Prosecutor]: Inconsistencies about the gun?
"A [Hardeman]: Yes, sir.
"Q [Prosecutor]: What about with regard to where the event occurred?
"A [Hardeman]: They were three or four different versions of where it occurred.
"Q [Prosecutor]: Based on the facts as he presented them to you, and based upon the physical evidence at the scene, did you make any determinaand your training and history as a police officer, did you make any determinations as to whether the shooting could have occurred as [Lewis] claimed it did?
"[Defense counsel]: Objection, Your Honor. He is asking for what appears to be a professional opinion from someone who is not qualified.
"The Court: Ask the question again, please.
"Q [Prosecutor]: Based on the facts surrounding the statements [Lewis] gave you, based on your investigation and the physical evidence recovered at the scene, physical evidence seen at the scene, based on the story he told you about where they were situated at the time of the shooting, and based on your experience as a homicide detective, taken as a whole, did you make a determination as to whether you believe the events occurred as [Lewis] claimed they did?
"[Defense counsel]: And we areobjection, Your Honor, on the following grounds: This is not a crime scene expert of, you know
"[Prosecutor]: It's lay witness testimony, Your Honor.
"The Court: Whoa, whoa, whoa.
"[Defense counsel]: Wait. Let me finish my objection.
"Number two, he's asking for an opinion. Number three, this man wasn't there, and admitted he wasn't there. It's up to the jury to determine what the evidence shows. He is asking for an opinion on the ultimate fact of this case.
"The Court: No. I think what he is asking for is an opinion as to whether or not, in his opinion as a homicide investigator, if the events appeared to take place as [Lewis] told him they did.
"I am going to overrule your objection; allow him to answer that question.
"A [Hardeman]: The question was, in my opinion, could the events have happened the way he said they did? No.
"Q [Prosecutor]: But you weren't there.
"A [Hardeman]: Correct."
(R. 193-94.)
The State did not offer Detective Hardeman as an expert witness in the area of crime-scene investigation or reconstruction; thus, the propriety of the above testimony involves an analysis of the admissibility of opinion evidence by a lay witness. See Ware v. State, 949 So.2d 169, 182 (Ala.Crim.App.2006).
Rule 701, Ala. R. Evid., addresses the admissibility of opinion evidence by a lay witness; it states:
"If the witness is not testifying as an expert, the witness's testimony in the *608 form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."
The advisory comments to Rule 701, Ala. R. Evid., state, in pertinent part:
"Alabama Rule of Evidence 701, like its identical counterpart under the Federal Rules of Evidence, permits lay witnesses to give opinions whenever two conditions are met. First, the opinion must be rationally based upon the perception of the witness. This is no more than a restatement of the `firsthand knowledge rule,' found in Ala. R. Evid. 602, tailored to opinions. No lay witness may give an opinion based upon facts that the witness did not personally observe. Second, a lay witness with firsthand knowledge may give an opinion only if it is helpful to a clear understanding of the witness's testimony or to the determination of a fact in issue. A fair amount of discretion is vested in the trial judge regarding the determination of whether opinions are helpful. It is clear, however, that opinions should be excluded as not being helpful if they are `meaningless assertions which amount to little more than choosing up sides.'" Rule 701, Ala. R. Evid., advisory committee's note."
Rule 704, Ala. R. Evid., also provides that "[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact."
"A lay witness has been precluded, under historic Alabama law, from giving an opinion upon the ultimate issue or fact to be decided by the trier of fact. This rule of exclusion is based upon the belief that to permit otherwise would usurp the function of the trier of fact. Case law in Alabama, however, may be categorized as having drifted away from a literal application of the traditional `ultimate issue rule.' As concessions to need, for example, lay opinions have been admitted as to insanity, value, and handwriting, despite the fact that these often either constitute or coincide with the ultimate issue in the given litigation."
Gamble's, McElroy's Alabama Evidence § 127.01(6) (5th ed. 1996) (emphasis added). Compare Fox Alarm Co. v. Wadsworth, 913 So.2d 1070, 1079 (Ala.2005) ("`The trend of Alabama appellate courts is to allow expert testimony as to an "ultimate issue" if that testimony would aid or assist the jury.'").
"Pre-Rules decisions said that neither lay nor expert witnesses could express opinions on an ultimate issue in a case. To do so, it is said, would invade the province of the jury. The prohibition on opinion testimony that goes to the ultimate issue is most frequently invoked in the context of lay testimony. Even a lay witness, however, may testify to an ultimate fact when it would be practically impossible for the witness to describe or reproduce the primary facts on which an inference is based or where a fact cannot be reproduced or made apparent to the jury or if better evidence is not attainable."
William A. Schroeder and Jerome A. Hoffman, Alabama Evidence § 7.36 (3d ed.2006) (emphasis added).
This exception to the general rule excluding opinion testimony by a lay witness has been referred to as the "collective facts" rule or the "shorthand rendition" rule. See C. Gamble, McElroy's Alabama Evidence § 127.01(2) (5th ed.1996).
In Hale v. State, 673 So.2d 803 (Ala. Crim.App.1995), we applied the "collective *609 facts" rule. Hale was convicted of burglary and appealed to this Court. He argued that the evidence was insufficient to convict him because the only evidence connecting him to the burglary were his fingerprints, which were found at the point of entry of the crime scene. Sergeant John Boyd was allowed to testify concerning the age of the fingerprints. In affirming the admission of this testimony, we stated:
"Boyd's testimony regarding the fingerprints was admissible. Boyd's statement that the prints `were over all that [pollen and dust]' and `[t]here wasn't any pollen or any dust [on top of the prints],'
"`"is a statement of fact, not of opinion.... [I]t is a matter readily ascertainable by any person with ordinary powers of observation and is not necessarily a subject requiring expert testimony." ... [The] testimony was not violative of the traditional rule in Alabama that a lay witness can testify to facts which he observed but cannot testify to opinions, conclusions, deductions, or inferences which are based upon facts. See C. Gamble, McElroy's Alabama Evidence, § 127.01(1) (3d ed.1977).'
"Tice v. State, 460 So.2d 273 (Ala.Cr. App.1984) (`Although Officer Smith was not qualified as an expert in tire track analysis, his testimony was admissible. No special training or expertise is required of a witness to identify the tread of tires and the tracks they leave.').
"Boyd's opinion that the prints were `fresh' was properly admitted because it constituted a `collective fact' or `shorthand rendition of fact.'
"`"A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact. This variety is most commonly referred to as the collective fact exception and arises when the facts observed by the witness are so many or so inexpressible that he is allowed to give the jury his opinion. His opinion is conceived of as being a shorthand way of giving the facts and, consequently does not constitute a violation of the opinion evidence rule." C. Gamble, McElroy's Alabama Evidence, Section 127.01(3) Variety No. 7 (3rd ed.1977).'
"Murrell v. State, 377 So.2d 1102, 1106 (Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala.1979).
"In Murrell a police officer was properly allowed to `state his opinion as to how long certain candy wrappers, cake wrappers, and milk cartons, which he found at the scene of the double murder, had been there.' The officer testified that `In [his] opinion they had been there only a short time.... they hadn't been there too long.' His opinion was based on the fact that there were `crumbs around the wrappers ... [that] were soft.' This court found that this testimony was admissible as a `collective fact' or a `shorthand rendition of fact' because `[h]is finding soft crumbs around the wrappers provided a logical basis for his opinion.' Murrell, 377 So.2d at 1106. The same is true in this case. Boyd's testimony that he had been lifting prints for over 12 years and that he could see that the prints were impressed on top of pollen and dust provided a logical basis for his opinion."
673 So.2d at 809-10. See also Trawick v. State, 512 So.2d 818 (Ala.Crim.App.1987) (police officer correctly allowed to testify that rape victim's room was "un-neat" and "untidy"); Lynn v. State, 543 So.2d 704 (Ala.Crim.App.1987) (investigator correctly allowed to testify that victim's house was "ransacked"); Wyrick v. State, 409 So.2d 969 (Ala.Crim.App.1981) (police officer correctly allowed to testify about the amount *610 of force needed to break open the victim's bedroom door).
More recently in Acklin v. State, 790 So.2d 975, 1004 (Ala.Crim.App.2000), this Court again discussed the "collective facts" rule and stated:
"`"Alabama has long recognized ... that a lay witness may give an opinion when the witness is unable to relate the facts to the jurors well enough to place the jurors in as good a position as the witness was in to reach an opinion or to draw a conclusion. Some would call this the `collective facts' exception to the opinion evidence rule."
"`Advisory Committee's Notes to Rule 701, Ala.R.Evid.
"`In this case, the witness's opinion amounted to this sort of shorthand recitation of the facts and was admissible under Rule 701, Ala.R.Evid.'"
790 So.2d at 1004.
Based on the above cases, we hold that the circuit court committed no error in allowing Detective Hardeman to testify concerning his impressions of the crime scene, specifically, whether the condition of the scene matched Lewis's version of the events.
Accordingly, we affirm Lewis's conviction for attempted murder.
AFFIRMED.
WISE, P.J., and WINDOM and KELLUM, JJ., concur.
WELCH, J., concurs in part and dissents in part, with opinion.
WELCH, Judge, concurring in part and dissenting in part.
I agree with the majority's holding that the trial court did not err in admitting into evidence Lewis's statement to the police. I disagree with the majority's holding that the trial court did not err when it overruled Lewis's objection to Detective Hardeman's testimony that the events could not have happened in the manner in which Lewis had described. The majority relies on cases in which this Court has previously applied the "collective facts" rule to uphold the admission of testimony that constituted a "shorthand rendition of fact." That rule has no application to this case because the testimony under review here involved Detective Hardeman's opinion as to the ultimate issue. Lay testimony as to the ultimate issue generally is not permitted in Alabama, and the trial court erred when it overruled Lewis's objection to the testimony in this case.
Rule 701, Ala. R. Evid., addresses the admissibility of opinion evidence by a lay witness and provides:
"If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."
Rule 704, Ala. R. Evid., states: "Testimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact." The Advisory Committee's Notes to Rule 704 explain: "The basis for the preclusion is the fear that the admission of such an opinion will preempt the role and function of the factfinder."
In this case, the testimony given by Detective Hardeman went beyond shorthand perceptions of certain evidencefor example, that certain evidence was fresh, stale, or the likethat have been permitted as exceptions to the rule against lay testimony as to the ultimate issue. Instead, *611 the prosecutor sought to elicit from Detective Hardeman his opinion on the ultimate issue in the case. The majority acknowledges as much when it concludes that Detective Hardeman testified "concerning his impressions of the crime scene, specifically, whether the condition of the scene matched Lewis's version of the events." 27 So.3d at 610. (Emphasis added.) The opinion elicited by the prosecution's question was not testimony regarding the facts; rather, the objectionable question and testimony followed the detective's complete exposition of the pertinent facts. The elicited testimony was purely a meaningless assertion that amounted only to "choosing up sides" and was improper. Rule 701, Ala. R. Evid., Advisory Committee's Notes, quoting Rule 701, Fed. R.Evid., Advisory Committee's Note ("It is clear, however, that opinions should be excluded as not being helpful if they are `meaningless assertions which amount to little more than choosing up sides.'").
Lewis's objection to the question proposed to Detective Hardeman was well taken and should have been sustained by the trial court. The trial court abused its discretion in allowing the prosecutor to elicit testimony that invaded the province of the jury. Detective Hardeman's testimony usurped the jury's function, and its admission created reversible error. Therefore, I respectfully dissent from that portion of the opinion.
NOTES
[1] Before the adoption of Rule 104, Ala. R.Evid., we held that "[A]n accused is not entitled to a hearing outside the presence of the jury unless he specifically requests one." Cliff v. State, 518 So.2d 786, 791 (Ala.Crim. App.1987). Rule 104, Ala.R.Evid., which became effective January 1, 1996, makes mandatory a hearing on a motion to suppress outside the presence of the jury. See also Charles Gamble, McElroy's Alabama Evidence § 200.02(5) (5th ed.1996).
[2] We pretermit discussion on the remaining issue pending the disposition of this issue on remand.
[1] The facts surrounding the shooting are set out in our original opinion. 27 So.3d at 601-02.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).